**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

BRITNEY RUDLER, *on behalf of herself and all others similarly situated,*

      *Plaintiff,*

   v.

MLA Law Offices, LTD., and John L. Malevitis,

      *Defendants*

**Docket Number:**

**19-CV-2170 (LDH) (LB)**

---

## MEMORANDUM OF LAW IN OPPOSITION
## TO DEFENDANTS' MOTION TO VACATE DEFAULT

---

J. Remy Green
Jessica Massimi
**COHEN&GREEN P.L.L.C.**
*Attorneys for Plaintiff*
1639 Centre St., Suite 216
Ridgewood (Queens), New York 11385
t : (929) 888-9480
f : (929) 888-9457
e : remy@femmelaw.com

November 15, 2019

# TABLE OF CONTENTS

TABLE OF CONTENTS..................................................................................................ii

TABLE OF AUTHORITIES ........................................................................................ iii

FACTUAL & PROCEDURAL HISTORY ................................................................. 1

ARGUMENT ................................................................................................................ 4

    I.    Defendants Were Served with Process and their Default was Willful. ............................. 5

        a.    Defendants were served with process. .....................................................5

        b.    The method of service used was proper.....................................................7

        c.    Defendants' default was willful, which precludes relief. .....................................10

    II.    Defendants Cannot Show They Have a Meritorious Defense. ......................................... 12

        a.    No defense exists to the facial violation of the FDCPA in the debt collection letters Defendants sent. ............................................................... 12

        b.    Defendants other arguments in attached letters are without merit....................... 14

CONCLUSION............................................................................................................ 18

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Action S.A. v Marc Rich & Co.*,
   951 F2d 504 (2d Cir 1991)..................................................................................10

*Bentley v. Great Lakes Collection Bureau*,
   6 F.3d 60 (2d Cir. 1993)...................................................................................12

*Bossuk v. Steinberg*,
   58 N.Y.2d 916, 460 N.Y.S.2d 509, 447 N.E.2d 56 (1983)......................................8

*Bozell Grp., Inc. v. Carpet Co-op of Am. Assoc., Inc.*,
   No. 00-CV-1248 (RWS), 2000 U.S. Dist. LEXIS 15088, 2000 WL 1523282
   (S.D.N.Y. Oct. 11, 2000) ..................................................................................11

*Bricklayers & Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v.*
   *Moulton Masonry & Constr., LLC*,
   779 F.3d 182 (2d Cir. 2015)............................................................................5, 12

*Cablevision Sys. NY City Corp. v Okolo*,
   197 F App'x 61 (2d Cir 2006) .......................................................................5, 6, 7

*Carlin v Davidson Fink LLP*,
   852 F3d 207 (2d Cir 2017)................................................................................14

*Chudomel v Dynamic Recovery Servs.*,
   2013 US Dist LEXIS 160226 (EDNY Sep. 11, 2013, No. 12-CV-5365 (NGG)
   (RLM)).................................................................................................12, 13

*Chudomel v. Dynamic Recovery Servs., Inc.*,
   No. 12-CV-05365 (NGG) (RLM), 2013 U.S. Dist. LEXIS 160226, 2013 WL
   5970613 (E.D.N.Y. Nov. 8, 2013).................................................................12, 13

*Clomon v. Jackson*,
   988 F.2d 1314, 1318 (2d Cir. 1993)...........................................................13, 15, 17

*Commercial Bank of Kuwait v Rafidain Bank*,
   15 F3d 238 (2d Cir 1994)..................................................................................10

*De Curtis v. Ferrandina*,
   529 F. App'x 85 (2d Cir. 2013) ...................................................................6, 10, 11

*Doe v Karadzic*,
  1996 US Dist LEXIS 5291 (SDNY Apr. 22, 1996, 93 Civ. 0878 (PKL), 93
  Civ. 1163 (PKL)) ...............................................................................................8, 9, 10

*Enron Oil Corp. v Diakuhara*,
  10 F3d 90 (2d Cir 1993)...................................................................................................5

*Gesualdi v Quadrozzi Equip. Leasing Corp.*,
  2016 US Dist LEXIS 102818 (EDNY Aug. 3, 2016)................................................12

*Goodrich v WFS Fin., Inc.*,
  2008 US Dist LEXIS 32163 (NDNY Apr. 18, 2008, No. 06-CV-1435)................................11

*Guzman v Mel S. Harris & Assoc.*,
  LLC, 2018 US Dist LEXIS 49622 (SDNY Mar. 22, 2018)....................................................15

*High Farms, LLC v King*,
  2019 US Dist LEXIS 42078 (EDNY Mar. 13, 2019, No. 16-CV-736 (NGG)
  (PK)) ...............................................................................................................................6

*Kistner v Law Offs. of Michael P. Margelefsky, LLC*,
  518 F3d 433 (6th Cir 2008) ...............................................................................14, 16

*Kolganov v Phillips & Cohen Assoc.*,
  2004 US Dist LEXIS 7069 ...........................................................................................13

*Krapf v. Prof'l Collection Servs., Inc.*,
  525 F. Supp. 2d 324 (E.D.N.Y. 2007) .......................................................................15

*Kulwa v. Obiakor OB/GYN P.C.*,
  12 Civ. 1868 (JG), 2013 U.S. Dist. LEXIS 17785 (E.D.N.Y. Feb. 8, 2013)..........................12

*Leab v, Streit*,
  584 F Supp 748 (SDNY 1984).......................................................................................7

*Margouleff v Beck*,
  2019 US Dist LEXIS 122620 (SDNY July 23, 2019, No. 18-CV-7334(RA))............6, 8, 9, 10

*Mayfield v. Asta Funding, Inc.*,
  95 F. Supp. 3d 685 (S.D.N.Y. 2015).......................................................................15

*McCrobie v Palisades Acquisition XVI, LLC*,
  359 F Supp 3d 239 (WDNY 2019) ...........................................................................16

*Melkaz Inl'l Inc. v. Flavor Innovation Inc.*,
  167 F.R.D. 634 (E.D.N.Y. 1996) ..................................................................................8

*Miller v Wolpoff & Abramson,*
  L.L.P., 321 F3d 292 (2d Cir 2003) ..................................................18

*Moukengeschaie v Eltman, Eltman & Cooper, P.C.,*
  2016 US Dist LEXIS 43725, at *56-57 (EDNY Mar. 31, 2016, No. 14-CV-
  7539 (MKB)) ..................................................................................18

*New York v. Shore Realty Corp.,*
  759 F.2d 1032 (2d Cir. 1985)..........................................................16

*Ohlson v Cadle Co.,*
  2006 US Dist LEXIS 98044 (EDNY Mar. 21, 2006) ..........................15

*Old Republic Ins. Co. v. Pac. Fin. Servs. of Am., Inc.,*
  301 F.3d 54 (2d Cir. 2001)...........................................................3, 5

*OneWest Bank N.A. v Elliott,*
  2016 US Dist LEXIS 68301 (EDNY May 23, 2016, No. CV 15-4395
  (JS)(ARL)) ......................................................................................7

*Reynolds v. Lifewatch, Inc.,*
  136 F. Supp. 3d 503, 526 (S.D.N.Y. 2015)......................................16

*Ritter v Cohen & Slamowitz, LLP,*
  118 F Supp 3d 497 (EDNY 2015) ...................................................15

*Schwarm v Craighead,*
  552 F Supp 2d 1056 (ED Cal 2008).................................................16

*Trujillo v Trujillo,*
  71 Cal App 2d 257, 162 P2d 640 (1945) ...........................................8

*United States v. Conolly,*
  694 F App'x 10 (2d Cir 2017) .........................................................5

*United States v One Hundred Sixty-Eight Thousand Fifty-Two Dollars & Twenty-
  Five Cents,*
  2016 US Dist LEXIS 34939 (EDNY Mar. 16, 2016, No. 14-CV-4219 (NGG)
  (RER))..........................................................................................11

*United States v. Riser,*
  No. 10 Civ. 4550, 2011 U.S. Dist. LEXIS 27000 (E.D.N.Y. Mar. 16, 2011) ..........................7

*US Flour Corp. v Certified Bakery, Inc.,*
  2012 US Dist LEXIS 29896 (EDNY Mar. 5, 2012, No. 10-CV-
  2522(JS)(WDW))............................................................................6

*Van Vooren v. Schwarz,*
    899 SW2d 594 (Mo Ct App 1995) ........................................................................8

*Vincent v Money Store,*
    736 F3d 88 ...............................................................................................16, 18

*White v Goodman,*
    200 F3d 1016 [7th Cir 2000] .........................................................................16

*Williams v Professional Collection Servs.,*
    2004 US Dist LEXIS 30639 (EDNY Dec. 7, 2004) ..........................................15

**Statutes**

FDCPA, 15 USC § 1692, *et seq.* ........................................................... *passim*

**Other Authorities**

CPLR § 308(1) ................................................................................................8

FRCP 4(d), (e), and (f) ................................................................... *passim*

FRCP 55(c) ....................................................................................................4

Plaintiff Britney Rudler, by her attorneys Cohen&Green P.L.L.C., submits this Memorandum of Law in opposition to Defendants' motion to vacate default/response to this Court's Order to Show Cause, dated November 6, 2019, directing Defendants to show cause why the certificates of default should be vacated.

Defendants have no excuse for default and instead, are intentionally difficult to serve for strategic reasons. Moreover, well-established factors the Second Circuit has established to evaluate "good cause" counsel strongly against allowing that strategy to pay dividends.

## FACTUAL & PROCEDURAL HISTORY

### *Waiver Requests and Initial Attempts at Service.*

Plaintiff commenced this case by filing a Complaint on April 12, 2019. On that same day, Plaintiff's counsel sent Defendants a first request to waive service pursuant to Federal Rule of Civil Procedure ("FRCP") 4(d)(1) ("An individual, corporation, or association that is subject to service under Rule 4(e), (f), or (h) has a duty to avoid unnecessary expenses of serving the summons"). Green Ex. A. On May 9, 2019, Plaintiff's counsel sent another request that Defendants waive service, stating "As a courtesy, I am letting you know that the Rule 4(d)(1) deadline is going to run this weekend … I can re-provide any materials you need, if that makes this easier." Green Ex. B. Throughout this same period, counsel also left at least two voicemails for the Defendants, at the phone number listed on the collection letter that is the subject of the underlying action. Green Cert. ¶ 10–12. Defendants never made any response. *Id* ¶ 12.

Throughout May and June, the process servers at "One Legal" made approximately ten (10) attempts to serve Defendants with process. See Green Ex. C (ECF No. 10) (Affidavits of One Legal Process Servers). As set out therein, on May 18, 2019, the server left a voicemail for Defendants requesting a return call. *Id.* On May 30, 2019, One Legal received that return call, and Attorney Malevitis "stated Friday would most likely be a time that he [would] be in [his

office].  He asked that [the server] give him a call Friday morning to arrange a time for

[service]." *Id*.  The process server "attempted the telephone number for [D]efendants as

instructed and received [an] automated message." *Id*.  Though the server again requested a

"return call" and made several more attempts at service, no service was accomplished. *Id*.

Thereafter, counsel again asked Defendants to waive process, noting that "If you do not

arrange for waiver of process or service of process, as I have provided, I will be going to my

more expensive server (whose retainer is typically $750.00-1,000.00, and whose actual bill in

this case was $ $1,034.50) because this is proving so difficult," and again noting that Rule 4

would provide for recovery of costs and attorneys fees related to service.  Green Cert. ¶ 6; Ex. D.

Counsel made the same request in a voicemail.  Green Cert. ¶ 11; Ex. D.

Plaintiff then retained the process servers at "Serving by Irving," who charge significant

fees, but trade on their reputation for serving the most difficult defendants. *See*

ServingByIrving.com ("Our specialty is in difficult and high-stakes services… Other lawyers

started to call me and ask me to serve all their work. I told them no; I said to them 'just give me

your hardest cases.'").  Because of how long the above had taken, on July 7, 2019, Plaintiff made

a motion to extend the time to serve the Complaint by 20 days recounting much of this history.

The Court granted that motion on July 9, 2019. *See* ECF Nos. 9-11.

***Serving by Irving successfully serves Defendants.***

On July 12, 2019, process server Gregory Piazza served Defendants with the Summons

and Complaint.  Green Ex. E (ECF No. 12 at 5-6).  As described in his affidavit, Mr. Piazza

"arrived at [Attorney Malevitis'] residence" at 7:40 a.m.  Green Ex. E at 1.  He saw Attorney

Malevitis' car, "a Nissan SUV with license plate H49 9103 … in the driveway[,] … backed in."

At 7:49 a.m., Mr. Piazza "observed the defendant exiting through the garage door" and was able

to identify "him from [having seen] a photo on his spouse's Facebook profile page."  Green Ex. E at 1-2 (with photo attached on page 2).

At that time, Attorney Malevitis was "setting something inside his Nissan SUV, through the passenger's side door."  Green Ex. E at 1.  Seeing that Attorney Malevitis "saw [him] approaching," "[i]n a loud clear voice," Mr Piazza "identified [him]self and announced that [he] was serving John Malevitis with court documents."  Rather than accept service, Attorney Malevitis "quickly entered his vehicle, through the driver's side door. He started the vehicle while looking very panicked."  *Id.*  Therefore, Mr. Piazza "announced service and left the pleadings on the premises as [Attorney Malevitis] drove off from the residence in an easterly direction."  *Id*.

Far from contradicting this account, the photographs provided in Exhibit A of the Motion confirm that the last portion of this encounter took place exactly as described in Mr. Piazza's affidavit:  Mr. Piazza announced service and left the pleadings on the premises.  This service had the effect of ensuring that Defendants did, in fact, "receive a copy of the Plaintiff's Complaint."  Motion ¶ 1.[1]  Moreover, at no point do Defendants deny they were aware of the suit.

Throughout attempts to serve Defendants, Plaintiff has discovered that Defendants make a strategic practice of being difficult to serve.  Thus, in an Affidavit of Attempted Service (ECF No. 12 at 3-4), one server recounts that she "[is] familiar with this defendant in as much as [she has] attempted to serve him in the past with no success."  Similarly, even in the first conversation with Defendants, Attorney Malevitis denied that FRCP 4 provides any duties to make

---

[1]       As discussed below, the Motion is not a sworn statement.  Thus, even if it **did** call into question any fact in the process server's affidavit (it does not), it would be insufficient to require even a so-called "traverse" hearing on whether service was proper.  *Old Republic Ins. Co. v. Pac. Fin. Servs. of Am., Inc*., 301 F.3d 54, 58 (2d Cir. 2001) ("no hearing is required where the defendant fails to swear to specific facts to rebut the statements in the process server's affidavits") (quotation marks omitted).

accomplishing service possible.  *But see* FRCP 4(d)(1) ("An individual, corporation, or association that is subject to service under Rule 4(e), (f), or (h) has a duty to avoid unnecessary expenses of serving the summons").

***Further Procedural History***.

Following service and the expiration of the time to answer, Plaintiff moved for a Clerk's Default, which was issued on August 12, 2019.  ECF No. 15.  In connection with Plaintiff's motions for leave to conduct limited discovery and for FRCP 4 costs and fees, the Court held a case conference.  At that conference, on September 19, 2019, the Court opined that (1) there was nothing stopping Plaintiff from simply issuing subpoenae to obtain information regarding the membership of the proposed class, at least as concerned third parties, and that (2) Plaintiff would be obtaining a Judgment soon anyway, so the motion for FRCP 4 costs and fees was premature (and perhaps redundant).  Plaintiff has since served a subpoena and will be presenting a class certification motion soon.

Despite being aware of all of this, Defendants did not even attempt to appear until October 28, 2019.  The Court granted Defendants' second motion to appear *pro hac vice* on November 6, 2019, contemporaneous with which the Court issued an Order to Show Cause directing Defendants to "show good cause in writing why the certificates of default should be vacated by November 15, 2019."  ECF Nos. 26-27.

## ARGUMENT

Defendants' Motion to Vacate Default (the "Motion"), made in response to the Court's Order to Show Cause, fails to make any legal or factual argument that there is "good cause" for the Court to vacate the default.  It should, therefore, be denied.

"The court may set aside an entry of default for good cause."  FRCP 55(c).  In determining whether good cause exists, "[t]he Second Circuit has established three criteria that

must be assessed in order to decide whether to relieve a party from default or from a default judgment. These criteria are: (1) the willfulness of default, (2) the existence of any meritorious defenses, and (3) prejudice to the non-defaulting party." *United States v. Conolly*, 694 F App'x 10, 12 (2d Cir 2017) (citations and quotation marks omitted)." *See also Bricklayers & Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 186 (2d Cir. 2015); *Enron Oil Corp. v Diakuhara*, 10 F3d 90, 96 (2d Cir 1993).

Defendants' motion fails to make any of the required showings of good cause, as it (1) admits that default was willful; and (2) does not show even attempt to show any meritorious defense.  Moreover, as discussed below, even assuming Defendants are making arguments they do not actually make, Defendants cannot make the required showings because their hypothetical arguments about service would be misguided as to the relevant law and because the FDCPA is a strict liability statute.

I.    <u>**Defendants Were Served with Process and their Default was Willful.**</u>

a.    <u>Defendants were served with process.</u>

As set out above, Defendants were served with process on July 12, 2019.  "In New York, a process server's affidavit of service establishes a *prima facie* case of the account of the method of service, and thus, in the absence of contrary facts, [courts] presume [a defendant] was properly served with the complaint." *Old Republic Ins. Co. v Pac. Fin. Servs. of Am., Inc.*, 301 F3d 54, 57 (2d Cir 2002), *overruled on other grounds by Burda Media, Inc. v. Viertel*, 417 F.3d 292, 298 (2d Cir. 2005).  *See also Cablevision Sys. NY City Corp. v Okolo*, 197 F App'x 61, 62 (2d Cir 2006) ("general denial of service" does not "warrant an evidentiary hearing, especially in light of the similarity between the descriptions" of events by both parties).

In order to overcome the *prima facie* account of service, a defendant must "swear to specific facts to rebut the statements in the process server's affidavits." *High Farms, LLC v King*, 2019 US Dist LEXIS 42078, at *6 (EDNY Mar. 13, 2019, No. 16-CV-736 (NGG) (PK)), *citing Old Republic*, *supra*, at 57.  "A defendant's sworn denial of receipt of service, however, rebuts the presumption of proper service established by the process server's affidavit and necessitates an evidentiary hearing, or what is known in New York as a 'traverse hearing.'" *Margouleff v Beck*, 2019 US Dist LEXIS 122620, at *17-18 (SDNY July 23, 2019, No. 18-CV-7334(RA)) (quotation marks omitted), *citing Old Republic*, *supra*, at 57.  That "sworn denial" may not be generic or general:  "[a] defendant's affidavit denying service rebuts the presumption of proper service established by the process server's affidavit and necessitates an evidentiary hearing, *only where the defendant swears to specific facts* to rebut the statements in the process server's affidavits.") (emphasis added) (internal quotation marks omitted).  *De Curtis v. Ferrandina*, 529 F. App'x 85, 86 (2d Cir. 2013).  "And courts may discredit such denials of service when there is ample evidence from which to conclude that the defendant's statements lacked credibility."  *Id* (cleaned up).

Here, Defendants do not even submit a sworn statement,[2] let alone one that specifically rebuts any facts.  Indeed, the Exhibit they provide (Motion Ex. A) merely confirms that Mr.

---

[2]     This failure to provide a sworn statement is a sufficient reason to deny the motion.  *See US Flour Corp. v Certified Bakery, Inc.*, 2012 US Dist LEXIS 29896, at *8-9 (EDNY Mar. 5, 2012, No. 10-CV-2522(JS)(WDW)) ("since Defendants denied receipt of service via a letter from their attorney and not via a sworn statement, a traverse hearing was not required").  However, this is a matter on which courts have "considerable procedural leeway," if there are other reasons the Court is concerned about process service.  *Id*, *citing Harris v. Wu-Tang Prods., Inc.*, No. 05-CV-3157, 2006 U.S. Dist. LEXIS 40527, 2006 WL 1677127, at *6 (S.D.N.Y. June 16, 2006) (traverse hearing held despite lack of sworn rebuttal because there was an allegation that the plaintiff served the wrong address).
         Here, Plaintiff submits that there are no inconsistencies whatsoever between Defendants' account and the process server's affidavit, and therefore, no need to spend scare judicial resources on a hearing.  *Cablevision Sys. NY City Corp. v Okolo*, 197 F App'x 61, 62 (2d Cir 2006) (general denial of service [does not] warrant an evidentiary hearing, especially in light of the similarity between the descriptions just mentioned")

Piazza's account of the last few seconds of his service on Defendants was completely accurate. Defendants do not deny that Attorney Malavitis was standing next to his car when Mr. Piazza arrived, nor do they deny that, upon Mr. Piazza announcing service, Attorney Malevitis "quickly entered his vehicle, through the driver's side door. He started the vehicle while looking very panicked."  Green Ex. E at 1.  Instead, they provide a generic denial that "the process server and/or agent hired by plaintiff's attorney … failed to properly and/or personally serve either of the defendants."  Motion ¶1, ¶2 (same).  This is, under well-settled law, insufficient.  *Cablevision Sys. NY City Corp. v Okolo,* 197 F App'x 61, 62 (2d Cir 2006) ("general denial of service" does not warrant an evidentiary hearing); *OneWest Bank N.A. v Elliott*, 2016 US Dist LEXIS 68301, at *10 (EDNY May 23, 2016, No. CV 15-4395 (JS)(ARL)) (noting "conclusory denials similar to Defendant's have been found insufficient to necessitate a hearing," where defendant specifically alleged that "there was no one present at the Pinebrook Property matching the description of the person alleged to have been served"); *United States v. Riser*, No. 10 Civ. 4550, 2011 U.S. Dist. LEXIS 27000 (E.D.N.Y. Mar. 16, 2011) (defendant's "vague and conclusory" denial of service in affidavit and statement that no occupant of residence fit process server's description were insufficient to vacate default judgment).

> b.  The method of service used was proper.

Rather than contesting the facts of service,[3] Defendants might be construed to be arguing that the method used for service — what is sometimes colloquially called "drop-service" — was deficient.  Courts have rejected this argument.[4]

---

[3]      If this is, in fact, the argument Defendants intended to make, the use of photographs as if they contradict the process server's affidavit and prove that "MLA and Malevitis have never been personally served" is odd.

[4]      A number of examples are discussed below.  For others, *see Leab v, Streit*, 584 F Supp 748, 759 (SDNY 1984) ("Even if, as Ms. Brand testified somewhat incredibly, the process server threw the summons to the floor near her when she resisted receipt, this still constituted 'delivery.'") (vacating default because summons was not delivered to "actual place of business," but ordering defendants to pay costs and attorneys fees to date for willful

Instead, "where the person to be served is himself clearly attempting to resist or evade service, the summons may be left in close proximity to the person." *Margouleff v Beck*, 2019 US Dist LEXIS 122620, at *14 (SDNY July 23, 2019, No. 18-CV-7334(RA)) (quotation marks omitted), *citing Prof'l Billing Res., Inc. v. Haddad*, 183 Misc. 2d 829, 832, 705 N.Y.S.2d 204 (N.Y.C. Civ. Ct. 2000); *Melkaz Inl'l Inc. v. Flavor Innovation Inc*., 167 F.R.D. 634, 642 n.6 (E.D.N.Y. 1996) ("[U]nder CPLR § 308(1), delivery of a summons and complaint may be accomplished by leaving it in the general vicinity of a person who resists service … if the person to be served interposes a door between herself and the process server, the latter may leave the summons outside the door provided the person to be served is made aware that he is doing so"); *Doe v Karadzic*, 1996 US Dist LEXIS 5291, at *5-6 (SDNY Apr. 22, 1996, 93 Civ. 0878 (PKL), 93 Civ. 1163 (PKL)) (service proper where server "approached defendant, offered the papers to him, and after being 'intercepted' by [a body guard], and having the papers knocked to the floor, he left them in the vicinity of defendant as he walked away" after announcing "you've been served"); *citing McDonald v Ames Supply Co*., 22 NY2d 111, 115 (1968) ("where the defendant resists service, it suffices to leave the summons in his general vicinity"). *See also* David D. Siegel, *New York Practice* § 66, (5th ed. 2011) at 82 ("All the process server has to do is tender the summons to the defendant. . . . The normal reaction of anyone to whom a paper is tendered, except in certain parts of Manhattan, is to extend a hand to receive it. But if the defendant does

---

default); *Bossuk v. Steinberg*, 58 N.Y.2d 916, 460 N.Y.S.2d 509, 447 N.E.2d 56 (1983); *Van Vooren v. Schwarz*, 899 SW2d 594, 595 (Mo Ct App 1995) (service sufficient where "process server had testified therein that she physically touched defendant with the summons and petition, that she drew back, the summons and petition fell to the ground, that the process server then picked up the papers and threw them at defendant and said 'you got it'"); *Trujillo v Trujillo*, 71 Cal App 2d 257, 259-260, 162 P2d 640, 641 (1945) (service valid where server "explained to the defendant the nature of the documents … in a loud and clear voice, but … defendant rolled the window up and refused to accept the documents; [so the server] then placed them under the windshield wiper in plain view of the defendant, who first tried to dislodge the papers by starting the windshield wiper, but failed to do so until after he had driven away").

not do that, the process server need only leave the summons on a table or other item nearby, or on the floor in front of the defendant (or behind him as he walks away).")

Here, Defendants have clearly resisted service. As recounted above, the process servers were even "familiar with this defendant," having attempted to serve him without success in the past. ECF No. 12 at 3. Plaintiff's initial servers made ten attempts to serve Defendants, and Attorney Malevitis even spoke to and mislead those process servers, falsely offering to make himself available for service. Attorney Malevitis also received more than a half-dozen communications reminding him of the duty to minimize the costs of service of process under FRCP 4, and made absolutely no response to those. And, finally of course, upon seeing a process server in person, Attorney Malevitis "quickly entered his vehicle … [and] started the vehicle while looking very panicked." Green Ex. E at 1. Use of "drop service" under such circumstances is entirely justified.

Instructive in how the Court might analyze this case are *Margouleff v. Beck* and *Doe v. Karadzic*, *supra*, and the differences in those cases. In *Beck*, while the process server swore an affidavit to similar facts to those here, a video raised meaningful questions as to whether the process server in fact "clearly apprised Beck that she was attempting to serve legal papers, or that her words were clearly audible to him." 2019 US Dist LEXIS 122620, at *20. "Thus, it [was] contested whether Defendant was indeed aware that the papers had been placed in close proximity to him." *Id*. For that reason, "the Court [found] that a traverse hearing [was] necessary to resolve the disputed facts," e.g., whether the Defendant was aware of the server's dropping papers when she did so. *Id* at *21. In *Karadzic*, by contrast, even taken in the light most favorable to the defendant:

> Jonathan Soroko attempted to effect service on defendant in the lobby of his hotel…. As he approached defendant and removed the papers to be served from his coat, Special

> Agent Roy Anthony Diebler, the Special Agent in Charge of the protective detail for defendant during this visit to New York, who was standing within feet of defendant, intercepted Soroko and batted Soroko's hand.  Diebler then held defendant physically and moved as quickly as possible to the waiting elevator.  Diebler, who stood next to defendant throughout the episode, heard Soroko shout words to the effect of 'You've been served. You've been served.'  At the time he heard this, Diebler claims that he and defendant were about 30 feet away from Soroko and ready to enter the elevator."

*Doe v Karadzic*, 1996 US Dist LEXIS 5291, at *3-4 (SDNY Apr. 22, 1996, 93 Civ. 0878 (PKL), 93 Civ. 1163 (PKL)).  Because the server "clearly apprised defendant that he was attempting to serve legal papers," the court in *Karadzic* concluded that service was effective.  Taken together, *Beck* and *Karadzic* provide that unless there is a genuine question of whether a defendant heard an announcement of service, no hearing is even required.  Unlike the video in *Beck*, the photographs here do not remotely call into question the facts (presumed true) laid out in the Mr. Piazza's affidavit:  he announced service to Attorney Malavitis, Attorney Malavitis panicked and began attempting to flee, and Mr. Piazza audibly announced he was leaving papers at the door, which — as confirmed by Motion Ex. A — he immediately did.

### c.   Defendants' default was willful, which precludes relief.

Finally, even if service was arguably improper, the default was willful, precluding relief under the Second Circuit's approach to default.  "Though each factor is to be considered, a default should not be set aside when it is found to be willful."  *De Curtis v Ferrandina*, 529 F App'x 85, 86 (2d Cir 2013) ("Based on the ample evidence submitted by De Curtis demonstrating her efforts to keep Ferrandina apprised of the existence of this litigation and Ferrandina's meager attempts to rebut the conclusion that he knew of the lawsuit but chose not to appear, we cannot say that the district court erred in its determination that the default was willful"); *Action S.A. v Marc Rich & Co.*, 951 F2d 504, 507 (2d Cir 1991).  Where — as Defendants acknowledge is true here — a defendant has "received actual notice of the complaint," an "inference of willful default is justified."  *Commercial Bank of Kuwait v Rafidain*

*Bank*, 15 F3d 238, 243 (2d Cir 1994) ("the Iraqi Banks have never stated that they failed to receive actual notice of the claims against them"); *Goodrich v WFS Fin., Inc*., 2008 US Dist LEXIS 32163, at *3 (NDNY Apr. 18, 2008, No. 06-CV-1435).  *Cf. also Bozell Grp., Inc. v. Carpet Co-op of Am. Assoc., Inc*., No. 00-CV-1248 (RWS), 2000 U.S. Dist. LEXIS 15088, 2000 WL 1523282, at *4 n.1 (S.D.N.Y. Oct. 11, 2000) ("Although not argued here, it should be noted that neither of Carpet One's initial defenses — that the lawsuit lacked merit and that the court did not have jurisdiction — constitutes 'good cause' excusing the failure to return the waiver of service forms under Rule 4.").

Here, Defendants here have not alleged that they did not have *actual* notice of the Complaint, merely that they strategically determined to default in order to drag the case out and impose additional litigation burdens on plaintiffs that attempt to hold them liable for illegal conduct, relying on the notion that they could later fight default.   Thus, refusing to provide relief from the default is even more justified than it was in *De Curtis*, *supra*, as counsel here has also submitted "ample evidence … demonstrating their efforts to keep [Defendants] apprised of the existence of this litigation," and Attorney Malevitis does not even provide a "meager attempt[] to rebut the conclusion that he knew of the lawsuit but chose not to appear."  529 F. App'x at 86. Instead, he candidly admits that the service attempt succeeded in providing actual notice of the suit.[5]

In brief:  Defendants' default was intentional and willful, and that fact alone precludes relief.  *De Curtis*, *supra*.  *See also United States v One Hundred Sixty-Eight Thousand Fifty-Two Dollars & Twenty-Five Cents*, 2016 US Dist LEXIS 34939, at *14 (EDNY Mar. 16, 2016, No. 14-CV-4219 (NGG) (RER)) ("The Court finds that Abdelrahman deliberately defaulted in this

---

[5]      Attorney Malevitis' call to the first process server similarly makes clear he had actual notice of the suit.

matter, and that the willfulness factor weighs decisively against relief from default judgment");

*Chudomel v. Dynamic Recovery Servs., Inc.*, No. 12-CV-05365 (NGG) (RLM), 2013 U.S. Dist.

LEXIS 160226, 2013 WL 5970613, at *4 (E.D.N.Y. Nov. 8, 2013) (recognizing finding of

willfulness alone is sufficient to let entry of judgment stand)

## II.   **Defendants Cannot Show They Have a Meritorious Defense.**

### a.   No defense exists to the facial violation of the FDCPA in the debt collection letters Defendants sent.

A defendant seeking to vacate a default judgment bears the "burden of offering evidence

sufficient to establish a complete defense." *Bricklayers & Allied Craftworkers*, 779 F.3d 182,

187 (2d Cir. 2015). "The Second Circuit has held that a defaulting defendant's failure to

demonstrate the existence of a meritorious defense, standing alone, is a sufficient reason to deny

the motion to vacate the entry of default." *Kulwa v. Obiakor OB/GYN P.C.*, 12 Civ. 1868 (JG)

(MDG), 2013 U.S. Dist. LEXIS 17785, at *23-24 n.6 (E.D.N.Y. Feb. 8, 2013), *citing Sony Corp.*

*v. Elm State Electronics, Inc*., 800 F.2d 317, 320 (2d Cir. 1980).  "A defense is meritorious if it

'give[s] the **factfinder** some determination to make.'" *Gesualdi v Quadrozzi Equip. Leasing*

*Corp.*, 2016 US Dist LEXIS 102818, at *29 (EDNY Aug. 3, 2016) (emphasis added), *citing Am.*

*Alliance Ins. Co. v Eagle Ins. Co*., 92 F3d 57, 61 (2d Cir 1996).

Courts have routinely denied relief from a default in FDCPA cases where there is

unequivocally one or more violations of the FDCPA, even when *some* subset of claims might

have meritorious defenses.  That is because "[t]he FDCPA is a strict liability statute, and even a

single violation of the statute is sufficient to establish liability." *Chudomel v Dynamic Recovery*

*Servs.*, 2013 US Dist LEXIS 160226, at *10-15 (EDNY Sep. 11, 2013, No. 12-CV-5365 (NGG)

(RLM)), *citing Ellis v. Solomon & Solomon, P.C.*, 591 F.3d 130, 133 (2d Cir. 2010); *Bentley v.*

*Great Lakes Collection Bureau*, 6 F.3d 60, 62 (2d Cir. 1993); *and Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir. 1993).

Thus, in *Chudomel*, *supra*, Judge Mann recommended the District Court decline to vacate a default and grant the plaintiff default judgment where "while some of the defenses proffered by defendant might in fact constitute a complete defense if proven at trial, defendant has not stated a viable a defense to one of plaintiff's FDCPA claims: to wit, that an agent of defendant contacted her over the telephone, threatened to report her debt to the IRS, and cautioned that such a report could lead to the placement of a lien on her house." *Chudomel v Dynamic Recovery Servs*., 2013 US Dist LEXIS 160226, at *10-11 (EDNY Sep. 11, 2013, No. 12-CV-5365 (NGG) (RLM)), *citing Guggenheim Capital, LLC v Birnbaum*, 722 F3d 444, 456-457 (2d Cir 2013) (default judgment is appropriate where the proffered "defense of fair use was destined to fail").

Similarly here, the Court may simply look to the face of the debt collection letters authored, sent, and signed by Attorney Malevitis to find FDCPA liability. Those letters (Green Ex. F for the letter sent to Plaintiff, Green Ex. G for two additional, identical letters filed in previous cases) facially violate the FDCPA in a number of ways, most importantly by failing to even state *any* amount of a debt. The FDCPA requires any initial communication to either contain, or be followed within 5 days with, "a written notice containing … the amount of the debt." § 1692g. As the Court can see, Defendants' consistent policy and practice over multiple years is to simply omit this information, presumably to reduce the amount of work involved in sending out letters. This violates the statute. *Kolganov v Phillips & Cohen Assoc*., 2004 US Dist LEXIS 7069, at *7 (EDNY Apr. 8, 2004, No. CV-02-3710 (SJF)(CLP) ("The FDCPA's objective is to require debt collectors to clearly specify the amount of debt owed"). Courts routinely impose liability for amounts that are misleading, and it would defeat the entire purpose

13

of the FDCPA if a debt collector could simply evade this caselaw by refusing to include an amount of a debt altogether.  *See e.g., Carlin v Davidson Fink LLP*, 852 F3d 207, 216-217 (2d Cir 2017) (FDCPA liability for debt collector where the statement that the "amount of debt" "*may* include *estimated* fees and costs") (emphasis in original).

As the Second Circuit has admonished:  "It is no great chore for Davidson Fink and other debt collectors to revise their standard payoff statements to clarify the actual amount due, the basis of the fees, or simply some information that would allow the least sophisticated consumer to deduce the amount she actually owes."  *Carlin v Davidson Fink LLP*, 852 F3d 207, 217 (2d Cir 2017).  Defendants have failed to even attempt this simple obligation.

### b.   Defendants other arguments in attached letters are without merit.

In the letters attached to Defendants' Motion as Exhibits B and C,[6] Defendants have made two other arguments, which are addressed herein in the interest of completeness.  Those arguments are wholly without merit.[7]

**First**, Defendants argue that veil-piercing is required in order to hold an individual attorney liable as a "debt collector."  *See* Motion Ex. C at 1-3.  Not so.  Numerous courts have rejected this argument, in particular as it relates to debt collection attorneys.  In brief, "[t]here is no doubt that in a generic sense a person who authors collection letters, supervises collection activities, and is the sole attorney in a debt collection firm is a 'debt collector' as defined by the FDCPA."  *Kistner v Law Offs. of Michael P. Margelefsky, LLC*, 518 F3d 433, 437 (6th Cir

---

[6]     Defendants technically do not identify the third exhibit in the Motion and dub it "Exhibit" on the Court's electronic filing system, but did place a sticker on it labeling it "Defendant's Exhibit C."

[7]     Defendants' contention that "plaintiff's attorney however did not … take any action to address the contentions raised by the defendants in the above referenced correspondence" is simply false.  Motion ¶ 4.  While the treatment of the law herein is more extensive, counsel explained the governing law in written correspondence at some length, citing many of the cases herein.  Green Cert. ¶¶ 15–19.

2008), *quoting Brumbelow v Law Offs. of Bennett & Deloney, P.C.*, 372 F Supp 2d 615, 618 (D Utah 2005).

In this Circuit, "[t]he law is clear … that officers and employees of the debt collecting agency may be jointly and severally liable with the agency where they have affirmatively acted." *Ohlson v Cadle Co.*, 2006 US Dist LEXIS 98044, at *8 (EDNY Mar. 21, 2006).  That is, far from being a question of veil piercing, "**courts within this Circuit have routinely found** that employees of debt collectors can be held liable where they personally participate in conduct that violates the FDCPA or GBL, **regardless of whether the corporate veil is pierced**."  *Guzman v Mel S. Harris & Assoc.*, LLC, 2018 US Dist LEXIS 49622, at *19 (SDNY Mar. 22, 2018) (emphasis added).  *See also Ritter v Cohen & Slamowitz, LLP*, 118 F Supp 3d 497, 497-498 (EDNY 2015) ("Cohen, and Slamowitz [— both individual attorneys —] are 'debt collectors' within the meaning of the FDCPA"); *Mayfield v. Asta Funding, Inc.*, 95 F. Supp. 3d 685, 702 (S.D.N.Y. 2015) (collecting cases, rejecting this argument, noting "Pressler contends that the 'question of liability of employees of a debt collector for violations of the FDCPA has not been answered in the Second Circuit.' Once again, Defendants either misread the law or Plaintiffs' allegations that Individual Defendants personally participated in activities prohibited by the FDCPA") (citation omitted).  *See also Clomon v. Jackson*, 988 F.2d 1314, 1316, 1323 (2d Cir. 1993) (holding that an attorney employed part-time as general counsel of a debt collecting agency was liable for his own actions in violation of the FDCPA); *Krapf v. Prof'l Collection Servs., Inc.*, 525 F. Supp. 2d 324, 327-28 (E.D.N.Y. 2007) (finding complaint sufficiently stated claim for individual liability where debt collection agency employees "personally engaged" in conduct prohibited by the FDCPA); *Williams v Professional Collection Servs.*, 2004 US Dist LEXIS 30639, at *8-9 (EDNY Dec. 7, 2004) ("A high-ranking employee, executive, or director

of a collection agency may fit within the statutory definition of a debt collector as long as the

defendant was personally involved in the collection of the debt"); *Reynolds v. Lifewatch, Inc.,*

136 F. Supp. 3d 503, 526 (S.D.N.Y. 2015).[8]  *See also, New York v. Shore Realty Corp*., 759 F.2d

1032, 1052 (2d Cir. 1985) (holding that "an owning stockholder who manages the corporation"

may be individually liable for environmental contamination cleanup costs as an 'operator' under

an environmental statute because "[u]nder CERCLA 'owner or operator' is defined to mean 'any

person owning or operating' an onshore facility," just as the FDCPA uses "any person…" in its

definition of "debt collector") (emphasis added).

**Second**, Defendants seeming position that Attorney Malevitis was not acting as himself,

but only as a corporate officer of MLA, runs contrary to established FDCPA law regarding

communications from attorneys and the personal role an attorney must take in debt collection

under the FDCPA.  The FDCPA independently forbids "[t]he false representation or implication

… that any communication is from an attorney."  If, as Attorney Malevitis suggests, his signing a

communication on behalf of "MLA Law Offices," as "J. L. Malevitis, Esq." was not a

communication from him (e.g., "an attorney"), the communication includes a "false

---

[8]      As set out by the Sixth Circuit in *Kistner*, *supra*, and in numerous decisions since then, there is something of a split on this issue, but "[a] majority of courts [to consider the issue] hold that an employee may be personally liable under the FDCPA."  *McCrobie v Palisades Acquisition XVI, LLC*, 359 F Supp 3d 239, 252-3 (WDNY 2019) (individual attorney "may be held liable individually for his own FDCPA violations").  The other side of this split, upon which Defendants rely, seems confined to the Seventh Circuit at this point.  Moreover, no Seventh Circuit case appears to address the particular concerns that attach to an attorney — as opposed to say, an ordinary shareholder like the leading Seventh Circuit case (*White v Goodman*, 200 F3d 1016, 1018 [7th Cir 2000]) in Defendants' letter — whose firm cannot act without an individual admitted to practice law (and indeed, would violate the FDCPA if it implied it would sue but had no admitted attorneys).

        That is, unlike an ordinary corporation, a law firm cannot act without the involvement of specific individuals, admitted to practice law.  Thus, the question of whether an attorney running a law firm satisfies the statutory definition of debt collector involves different questions than those in *White*.  *See e.g., Schwarm v Craighead*, 552 F Supp 2d 1056, 1072, n 13 (ED Cal 2008) (noting that defendant correctly observed that the *White* line of cases does not include law firm/attorney-defendants).  *Cf. Vincent v Money Store*, 736 F3d 88, 115 (2d Cir 2013) ("a debt collector's misrepresentation of its involvement in collecting a debt as an attorney is different from a creditor's misrepresentation of its involvement in collecting a debt as a debt collector").

representation or implication" that the "communication" was "from an attorney."  Motion Ex. C at 1-2.[9]

The Second Circuit has directly held that "**[t]he use of an attorney's signature on a collection letter implies that the letter is 'from' the attorney who signed it**; it implies, in other words, that the attorney directly controlled or supervised the process through which the letter was sent . . . . The use of an attorney's signature implies -- at least in the absence of language to the contrary -- that the attorney signing the letter formed an opinion about how to manage the case of the debtor to whom the letter was sent."  *Clomon v. Jackson*, 988 F.2d 1314, 1321 (2d Cir. 1993) (emphasis added); see contra Motion Ex. C at 1-2 ("There is absolutely no evidence … that attorney John L. Malevitis authored and/or sent the Plaintiff the letter at issue in his individual and/or personal capacity").  *See also id* at 3 (seeming to imply that MLA and Attorney Malevitis only "perform ministerial duties for debt collectors, such as stuffing a printing the debt collector's letters").  The collection letters Defendants send *en masse* do not contain any "language to the contrary" indicating that the letter has not been reviewed and personally evaluated by the attorney who signed it.  See Green Exs. F & G (Letterhead reading "MLA LAW OFFICES, LTD, ATTORNEYS AT LAW," with letter beginning "We represent AcceptanceNow," and concluding "**THIS IS AN ATTEMPT TO COLLECT A DEBT**...") (bold/caps in original).

Thus, Defendants' argument that Attorney Malevitis was not personally involved in drafting and sending the collection letters — and the implication that his role amounts to

---

[9]     Relatedly, the seeming claim that Attorney Malevitis was acting as an "attorney **for** MLA [Law Offices]," rather than its managing partner is also puzzling.  Motion Ex. C at 2 (emphasis added).  If Malevitis was only acting by representing MLA as its attorney, that would seem to leave MLA unable to act as a law firm, as it would have no members admitted to any bar.  ECF No. 1, ¶ 14 ("Malevitis is the president, registered agent, founder, and upon information and belief, sole attorney working at MLA.").

"perform[ing] ministerial duties for debt collectors, such as stuffing a printing the debt collector's letters" (Motion Ex. C at 3) — far from a defense, seems to be a free-standing admission to FDCPA liability.  *See Vincent v Money Store,* 736 F3d 88, 97, n 6 (2d Cir 2013) (citing with approval to *Clomon*, *supra*, at 1321, for the proposition that "there will be few, if any, cases in which a mass-produced collection letter bearing the facsimile of an attorney's signature will comply with the restrictions imposed by § 1692e."); *Miller v Wolpoff & Abramson*, L.L.P., 321 F3d 292, 306 (2d Cir 2003); *and Moukengeschaie v Eltman, Eltman & Cooper, P.C.*, 2016 US Dist LEXIS 43725, at *56-57 (EDNY Mar. 31, 2016, No. 14-CV-7539 (MKB)) ("To avoid violating section 1692e(3), a debt collection letter that appears with an attorney's signature must reflect 'meaningful attorney involvement'").

## **CONCLUSION**

For all of the reasons discussed herein, Plaintiff respectfully requests that the Court deny Defendants' motion and find that "good cause" has not been shown.


Dated:          November 15, 2019
                Queens, New York


                              Respectfully Submitted,
                                   /s/
                              _____
                              J. REMY GREEN
                              JESSICA MASSIMI
                              Cohen&Green P.L.L.C.
                              1639 Centre Street, Suite 216
                              Ridgewood, NY 11385
                              (929) 888.9480 (telephone)
                              (929) 888.9457 (facsimile)
                              remy@femmelaw.com