**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

Britney Rudler, *on behalf of herself and all others similarly situated,*

Plaintiff,

v.

MLA Law Offices, LTC., and John L. Malevitis,

Defendants.

**Docket No. 19-CV-2170 (EK) (LB)**

---

## MEMORANDUM OF LAW IN SUPPORT
## OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

---

J. Remy Green
Jessica Massimi
**COHEN&GREEN P.L.L.C.**
1639 Centre Street, Suite 216
Ridgewood, NY 11385
(929) 888.9480 (telephone)
(929) 888.9457 (facsimile)
remy@femmelaw.com

*Attorneys for Plaintiff*

September 30, 2020

**TABLE OF CONTENTS**

TABLE OF CONTENTS ...................................................................................................................i

TABLE OF AUTHORITIES ...........................................................................................................ii

PRELIMINARY STATEMENT ......................................................................................................1

FACTUAL SUMMARY ..................................................................................................................2

PROCEDURAL SUMMARY ..........................................................................................................4

ARGUMENT ...................................................................................................................................5

    I.    Plaintiffs and the Class Will Prevail on Their Substantive Claims. ................................6

        A.    Defendants Have Conceded FDCPA Liability..........................................................6

        B.    Defendants' Conduct Also Violated New York State Law........................................6

    II.    The Court Should Certify Both the FDCPA Subclass and the NYGBL Subclass....................8

        A.    Rule 23(a)(1): Joining Thousands of Individual Suits Is Impracticable...............................9

        B.    Defendants' Boilerplate Letters Raise Common Issues of Law and Fact. .........................10

        C.    Plaintiff's Claims Are Typical of the Class.........................................................12

        D.    Plaintiff and Her Counsel Will Adequately Protect the Interests of the Class.................13

        E.    Plaintiff Proposes an Ascertainable Class With Objective Criteria. ....................................14

        F.    A Class Action Is A Superior Method for Adjudicating This Controversy .......................15

        G.    Common Questions of Law and Fact Predominate ............................................................17

        H.    Class-Wide Injunctive and Declaratory Relief Is Warranted. ...........................................17

        I.    Class Certification As a Hybrid Class Under Rules 23(b)(2) and (3) Is Appropriate............18

CONCLUSION...............................................................................................................................19

**TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Aghaeepour v. N. Leasing Sys.*,
2015 U.S. Dist. LEXIS 161018 (S.D.N.Y. Dec. 1, 2015) ........................................................7

*Am. E Grp. LLC v. LiveWire Ergogenics Inc.*,
No. 1:18-cv-3969-GHW, 2020 U.S. Dist. LEXIS 14235 (S.D.N.Y. Jan. 28, 2020) ........................2

*Amchem Products, Inc. v. Windsor*,
521 U.S. 591 (1997) ......................................................................................................9, 17

*Annunziato v. Collecto, Inc.*,
293 F.R.D. 329 (E.D.N.Y. 2013) .........................................................................................11

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
222 F.3d 52 (2d Cir. 2000) ................................................................................................13

*Bitzko v. Weltman, Weinberg & Reis Co., LPA*,
No. 1:17-CV-00458, 2019 U.S. Dist. LEXIS 161495 (N.D.N.Y. Sep. 23, 2019) ............................9

*Borcherding-Dittloff v. Transworld sSys., Inc.*,
185 F.R.D. 558 (W.D. Wis., 1999) .......................................................................................18

*Bracamonte v. Eskanos & Adler*,
2004 U.S. Dist. LEXIS 8520 (N.D. Cal., May 7, 2004) ..............................................................18

*Campbell v. MBI Assocs., Inc.*,
98 F. Supp. 3d 568 (E.D.N.Y. 2015) .....................................................................................7

*Charles v. Nationwide Mut. Ins. Co.*,
No. 09-CV-94, 2010 U.S. Dist. LEXIS 143487 (EDNY May 27, 2010) ........................................14

*Chudomel v Dynamic Recovery Servs.*,
2013 US Dist LEXIS 160226 (EDNY Sep. 11, 2013, No. 12-CV-5365 (NGG)
(RLM)) .........................................................................................................................6

*Clarkson v Coughlin*,
783 F. Supp. 789 (S.D.N.Y. 1992) .......................................................................................10

*Clomon v. Jackson*,
988 F.2d 1314 (2d Cir. 1993) ....................................................................................3, 6, 7, 8

*Colbert v. Trans Union Corp.*,
1995 U.S. Dist. LEXIS 578 (E.D. Pa. Jan. 12, 1995) ................................................................15

*Consol. Rail Corp. v Town of Hyde Park,*
    47 F.3d 473 (2d Cir. 1995) .......................................................................... 10

*County of Suffolk v. Long Island Lighting Co.,*
    710 F. Supp. 1407 (E.D.N.Y. 1989), *aff'd,* 907 F.2d 1295 (2d Cir. 1990) ..................... 13

*Damassia v. Duane Reade, Inc.,*
    250 F.R.D. 152 (S.D.N.Y. 2008) ................................................................... 10

*del Campo v. Am. Corrective Counseling Servs., Inc.,*
    254 F.R.D. 585 (N.D. Cal. 2008) .................................................................. 18

*Dunnigan v Metro. Life Ins. Co.,*
    214 F.R.D. 125 (S.D.N.Y. 2003) ................................................................ 9, 14

*Dura-Bilt Corp. v. Chase Manhattan Corp.,*
    89 F.R.D. 87 (S.D.N.Y. 1981) ...................................................................... 12

*Ellis v. Cohen & Slamowitz, LLP,*
    701 F. Supp. 2d 215 (N.D.N.Y. 2010) .............................................................. 7

*Ellis v. Solomon & Solomon, P.C.,*
    591 F.3d 130 (2d Cir. 2010) ......................................................................... 6

*Foti v. NCO Fin. Sys.,*
    2008 U.S. Dist. LEXIS 16511 (S.D.N.Y. Feb. 19, 2008) .......................................... 17

*Fritz v. Resurgent Capital Servs, LP,*
    955 F. Supp. 2d 163 (E.D.N.Y. 2013) .............................................................. 8

*Gallagher v. N.Y. State. Bd. of Elections,*
    20-cv-5504 (SDNY 2020) .......................................................................... 13

*Gammon v. GC Services Ltd. Partnership,*
    162 F.R.D. 313 (N.D. Ill. 1995) ................................................................... 18

*In re Glob. Crossing Sec. & ERISA Litig.,*
    225 F.R.D. 436 (S.D.N.Y. 2004) .................................................................... 9

*Halford v. Goodyear Tire & Rubber Co.,*
    161 F.R.D. 13 (W.D.N.Y. 1995) ............................................................... 11, 13

*Hallmark v. Cohen & Slamowitz, LLP,*
    293 F.R.D. 410 (W.D.N.Y. 2013) ................................................................... 15

*Haynes v. Logan Furniture Mart, Inc.,*
    503 F.2d 1161 (7th Cir. 1974) ..................................................................... 16

*Heintz v. Jenkins,*
  514 U.S. 291 (1995) ................................................................................................6

*Hevesi v. Citigroup Inc.,*
  366 F.3d 70 (2d Cir. 2004) ....................................................................................12

*Hunt v. Check Recovery Sys.,*
  241 F.R.D. 505 (N.D. Cal. 2007) ..........................................................................18

*In re Initial Public Offerings Securities,*
  471 F.3d 24 (2d Cir. 2006) ......................................................................................9

*Irwin v. Mascott,*
  96 F. Supp. 2d 968 (N.D. Cal. 1999) .....................................................................18

*Jeffries v. Pension Trust Fund of the Pension, Hospitalization & Benefit Plan of the Elec. Indus.,*
  2007 U.S. Dist. LEXIS 61454 (S.D.N.Y. Aug. 20, 2007) .....................................14

*Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich, L.P.A.,*
  559 U.S. 573 (2010) ................................................................................................6

*Jones v. United States Postal Service,*
  20-cv-6516 (SDNY 2020) ......................................................................................13

*Kalish v. Karp & Kalamotousakis, LLP,*
  246 F.R.D. 461 (S.D.N.Y. 2007) ...........................................................................15

*Labbate-D'Alauro v. GC Servs. Ltd. Pshp.,*
  168 F.R.D. 451 (E.D.N.Y. 1996) .............................................................11, 13, 15, 16

*Leone v. Ashwood Fin., Inc.,*
  257 F.R.D. 343 (E.D.N.Y. 2009) ...........................................................................10

*Macarz v. Transworld Sys., Inc.,*
  193 F.R.D. 46 (D. Conn. 2000) ..............................................................................11

*Madden v. Midland Funding, LLC,*
  2017 U.S. Dist. LEXIS 27109 (S.D.N.Y. Feb. 27, 2017) ...................7, 15, 17, 18

*Marisol A. by Forbes v. Giuliani,*
  126 F.3d 372 (2d Cir. 1997) ................................................................................9, 10

*Massey v. On-Site Mgr., Inc.,*
  285 F.R.D. 239 (E.D.N.Y. 2012) .............................................................................9

*McAnaney v. Astoria Fin. Corp.,*
  2006 U.S. Dist. LEXIS 66941 (E.D.N.Y. Sept. 19, 2006) .....................................18

*In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.,*
   209 F.R.D. 323 (S.D.N.Y. 2002) ................................................................14

*Miller v Wolpoff & Abramson, L.L.P.,*
   321 F3d 292 (2d Cir 2003) ........................................................................8

*Moukengeschaie v Eltman, Eltman & Cooper, P.C.,*
   2016 US Dist LEXIS 43725 (EDNY Mar. 31, 2016) ...................................8

*Myers v. Hertz Corp.,*
   624 F.3d 537 (2d Cir. 2010) ......................................................................17

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.,*
   85 N.Y.2d 20 (N.Y. 1995) ...........................................................................7

*Passeggio v. Cosmetique Inc.,*
   CV-98-1774, 1999 U.S. Dist. LEXIS 7607 (E.D.N.Y. Apr. 30, 1999) ............11

*People v. Boyajian Law Offices, P.C.,*
   17 Misc. 3d 1119(A) (Sup. Ct., N.Y. Cty. 2007) ........................................7

*Petrolito v. Arrow Fin. Servs., LLC,*
   221 F.R.D. 303 (D. Conn. 2004) ...............................................................16

*Port Auth. Police Benevolent Ass'n v. Port Auth. of N.Y. & N.J.,*
   698 F.2d 150 (2d Cir. 1983) ......................................................................11

*Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.,*
   237 F.R.D. 26 (E.D.N.Y. 2006) .................................................................11

*In re Risk Mgmt. Alternatives, Inc.,*
   208 F.R.D. 493 (S.D.N.Y. 2002) ..........................................................15, 17

*Robidoux v. Celani,*
   987 F.2d 931 (2d Cir. 1993) ......................................................................10

*Robinson v. Metro– N. Commuter R.R. Co.,*
   267 F.3d 147 (2d Cir. 2001) ......................................................................12

*Samms v. Abrams,*
   163 F. Supp. 3d 109 (S.D.N.Y. 2016) .........................................................7

*Schwarm v. Craighead,*
   233 F.R.D. 655 (E.D. Cal. 2006) ...............................................................18

*Sparkman v. Zwicker & Assocs., P.C.,*
   374 F. Supp. 2d 293 (E.D.N.Y. 2005) .........................................................8

*In re Sumitomo Copper Litig.*,
  189 F.R.D. 274 (S.D.N.Y. 1999) ................................................................... 9

*Swanson v. Mid Am, Inc.*,
  186 F.R.D. 665 (M.D. Fla. 1999) ........................................................... 11, 18

*Sykes v. Mel Harris & Assocs. LLC*,
  285 F.R.D. 279 (S.D.N.Y. 2012), *aff'd*, 780 F.3d 70 (2d Cir. 2015) .................... 16

*Sykes v. Mel S. Harris & Associates LLC*,
  780 F.3d 70 (2d Cir. 2015) ........................................................... *passim*

*Trief v. Dun & Bradstreet Corp.*,
  144 F.R.D. 193 (S.D.N.Y. 1992) ................................................................. 10

*Vincent v. Money Store*,
  304 F.R.D. 446 (S.D.N.Y. 2015) ............................................................... 11

*Vincent v Money Store*,
  736 F3d 88 (2d Cir 2013) ........................................................................ 8

*Vu v. Diversified Collection Servs.*,
  293 F.R.D. 343 (E.D.N.Y. 2013) .............................................................. 11

*Wal-Mart Stores, Inc. v. Dukes*,
  131 S. Ct. 2541 (2011) ..................................................................... 10, 17

*Yang v. N.Y. State Bd. of Elections*,
  20-cv-3325 (SDNY 2020), *aff'd sub. nom. Yang v. Kosinski*, 960 F.3d 119 (2d Cir.
  2020) ............................................................................................. 13

## Statutes

15 U.S.C. § 53(b) .................................................................................... 8

15 U.S.C. § 1692(e) ................................................................................. 6

15 U.S.C. § 1692g(a)(1) ...................................................................... 3, 5, 6

15 U.S.C. § 1692k(c) ............................................................................... 3

Fair Debt Collection Practices Act, 15 U.S.C. 1692, *et seq.* ........................... *passim*

N.Y. Gen. Bus. L. § 349 ..................................................................... 1, 6, 7

## Other Authorities

7A Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1769.1 (3d
  ed. 2005) ........................................................................................ 13

Fed. R. Civ. P. 23 ................................................................................................. 9, 15, 17

Fed. R. Civ. P. 23(a) ......................................................................................................*passim*

Fed. R. Civ. P. 23(b) ......................................................................................................*passim*

Fed. R. Civ. P. 37(c) ................................................................................................................5

1 Herbert Newberg & Alba Conte, *Newberg on Class Actions* § 3.10 (3d ed. 1992) .......................... 11, 12

## PRELIMINARY STATEMENT

Class certification is appropriate here because Defendants have sent improper, identical collection letters – letters they admit violate the Fair Debt Collection Practices Act ("FDCPA") – to tens of thousands of consumers.  Efficient resolution of tens of thousands of identical claims in a single suit is essentially *the* purpose of the class action mechanism.  And because of the applicable statute of limitations and delays in reaching this issue because of discovery, there is no one in the Class who has an FDCPA claim that can be redressed except through this case.  Thus, this case should be resolved on a class-wide basis.

Plaintiff seeks certification of a class (the "Class"), consisting of two closely related subclasses, defined as follows:

The Class is:

      i.     natural persons;

      ii.     who received a letter from MLA and Malevitis;

      iii.     which letter failed to state the amount of any alleged debt or debts *or* did not reflect any meaningful attorney review; and

      iv.     who are a member of either the FDCPA Subclass or the NYGBL Subclass, or both.

The "FDCPA Subclass" is all those who meet the Class definition above and who received a letter of the kind named above within a year before filing of the Complaint.  The "NYGBL Subclass" (New York General Business Law) is all those who live in the State of New York, meet the Class definition above, and received a letter of the kind named above within three years before filing of the instant Complaint (in both instances, these terms are the statute of limitations periods applicable to the claims at issue).  Excluded from the Class and subclasses are:  (i) anyone employed by prior or

future counsel for Defendants in this action; and (ii) any Judge to whom this case is assigned, as well as their immediate family and staff.

As detailed below, this action satisfies all the requirements for class certification under Rule 23(a): numerosity, commonality, typicality, and adequacy of representation. This action also satisfies the two core requirements for certification under Rule 23(b)(3): predominance of common questions of law or fact and superiority of a class action over other available methods of adjudication. It also meets the core requirements of Rule 23(b)(2), namely a common course of conduct by defendants warranting injunctive relief awarded to the Class as a whole. For those reasons, the Court should certify the Class.

## FACTUAL SUMMARY

The facts here are straightforward and are virtually identical all proposed class members. Defendants – MLA Law Offices, LTD and its sole member, attorney, and owner, John Malevitis – have a substantial collections practice on behalf of Rent-A-Center and other members of the Rent-A-Center corporate family. In the relevant period – between April 12, 2018 and "a date in May 2019" – Defendants sent 19,355 identical collection letters that included no amount of debt. Green Ex. 4.

Despite the scope of this practice, Defendants do not "review any local law before sending the letter[s]." Green Ex. 6 at 24:16-20. Nor do they conduct any review that would indicate whether local law might "forbid a certain amount of interest" from being included in a debt. *Id.* at 25:5-10, *and see, for example*, *Am. E Grp. LLC v. LiveWire Ergogenics Inc.*, No. 1:18-cv-3969-GHW, 2020 U.S. Dist. LEXIS 14235, at *30 (S.D.N.Y. Jan. 28, 2020) (applying New York's bar on certain amounts of interest to invalidate a debt entirely). Indeed, Defendants do not review *any* records indicating the amount or existence of a valid debt before sending collection letters. Green Ex. 6 at 140:14-142:8. Defendants simply take a bare allegation that a debt exists and the names of alleged

2

debtors from Rent-A-Center and use those names to generate collection letters on law firm letterhead.  *Id.*  At no point have Defendants audited the systems Rent-A-Center uses to track alleged debts.  *Id.* at 142:16-143:7.  In short, "other than [Rent-A-Center] telling [Defendants], literally, [']these numbers are accurate,['] [Defendants] do not know what [Rent-A-Center does] to assure the accuracy of amounts of debt."  *Id.* at 142:16-143:18.  Yet, the form letter Defendants use contains no disclaimer regarding attorney (non-)involvement in the collection and review process.  *See* ECF No. 51-1, *but see Clomon v. Jackson*, 988 F.2d 1314, 1321 (2d Cir. 1993) ("[t]he use of an attorney's signature on a collection letter implies that the letter is 'from' the attorney who signed it; it implies, in other words, that the attorney directly controlled or supervised the process through which the letter was sent … [and] that the attorney signing the letter formed an opinion about how to manage the case of the debtor to whom the letter was sent.").  Defendants also lack any "mechanisms or procedures" by which they "assure the accuracy" of the debts they collect.  Green Ex. 6 at 141:25-143:18.[1]

On or about March 29, 2019, Defendants created and mailed Plaintiff a form collection letter.  ECF No. 60 (Defendants' Amended Answer, "Answer") at ¶ 20.  That letter was the first communication to Plaintiff from Defendants and Defendants never sent any other communications. *Id.* ¶¶ 23-24.  The letter Defendants sent – along with the 19,000-some others in the relevant period – did not include any amount of debt.  *Id.* ¶ 69.  The failure to include that amount violates the FDCPA – which Defendants have conceded.  *Id.* (admitting "Defendants MLA and Malevitis violated 15 U.S.C. § 1692g(a)(1)").  The letter – like the other letters Defendants sent in the relevant period – bears Mr. Malevitis's signature, and Mr. Malevitis is an attorney.  ECF No. 51-1; *see also*, Green Ex. 6 at 20:3-6.

---

[1] This precludes any bona fide error defense.  *See* 15 U.S.C. § 1692k(c) (requiring "maintenance of procedures reasonably adapted to avoid any such error.").

## **PROCEDURAL SUMMARY**

Despite its simplicity, this case has taken a long path to get to this motion (and this summary omits procedural pieces irrelevant here).  Plaintiff filed her Complaint on April 12, 2019.  ECF No. 1.  After being served, Defendants initially defaulted.  ECF Nos. 14-15.  Then, Defendants appeared and the Court vacated the default and permitted Defendants to defend the action.  ECF No. 27; November 20, 2019 Minute Order.  Defendants then proposed a motion to dismiss that generically cited the motion to dismiss standard with no explanation, and asserted the FDCPA does not allow personal liability.  ECF No. 32.  After a conference where Judge DeArcy Hall counseled, "You would lose on a motion to dismiss," Defendants withdrew the request to file the motion to dismiss. ECF No. 52; Feb. 7, 2020 Minute Order; ECF No. 74 at 9:8-12.  Based on the same conference, Plaintiffs amended the Complaint and Defendants answered jointly.  ECF Nos. 51 and 53.

Simultaneously, Plaintiffs proposed a motion for summary judgment, to strike shotgun-pled affirmative defenses, and judgment on the pleadings.  ECF No. 37.  After retaining counsel, Defendants ultimately amended their Answer to both concede FDCPA liability and remove substantially all of their affirmative defenses.  ECF No. 60; *see also*, ECF No. 74 at 19:18-20 (THE COURT: "…by my count, all but one of your affirmative defenses I think are improper and would likely have been stricken").  Following that, and after the case was reassigned to Judge Komitee, at the Court's request, the parties briefed "the proper order of disposition as between liability and class certification in this case."  ECF No. 69.  Judge Komitee then decided it would be better for the Court to hear argument on class certification before liability – and directed Plaintiffs to file the present motion on or before September 30, 2020.  ECF No. 75 at 4.

Class discovery here also took significant time.  *See generally*, ECF No. 76.  The Court granted several extensions of the discovery end date.  *See, e.g.*, ECF No. 73.  After months of discovery and meet and confers, Defendants eventually disclosed that there were 19,355 members of the FDCPA

Subclass and declined to disclose the amount of members in the NYGBL Subclass – simply asserting that the class was numerous enough for certification.  Green Dec. ¶ 10.  That said, Defendants spent more months delaying or refusing to provide any statement of net worth or any underlying net worth discovery.  *See generally,* ECF No. 76.  Ultimately, Defendants provided a statement of net worth that all but explicitly said "Defendants have assets and income streams that they are not disclosing."  *See* ECF No. 76-3; *see also* note 2, *below.*  At a conference on a motion to compel or deem the issue waived, the Court directed Plaintiffs to simply make this motion without net worth discovery, and drop a footnote about the net worth issue and waiver.[2]

This motion now follows, in the time set by the Court.

## ARGUMENT

Plaintiffs seek certification of a Class – along with corresponding Subclasses – as described in the Preliminary Statement above.  Essentially, the Class proposed is all persons who received a collection letter from Defendants within the applicable statute of limitations for each of Plaintiff's statutory claims.[3]  This memorandum proceeds by briefly discussing the merits of the case for context in Point I, before walking through each element of class certification in Point II.

---

[2] Thus, Plaintiffs note that, rather than providing a meaningful statement of net worth, Defendants provided (at the very end of the discovery period) a statement that makes clear that it cannot serve the purpose Defendants intend to use it for (determining Defendants' net worth), because it disclaims any reliability:

"[This report] is limited to presenting information that is the representation of Mr. Malevitis in the form of financial statements. **I have not audited or reviewed the accompanying financial statements and, accordingly, do not express an opinion or any other form of assurance of them**. [...]

**"Mr. Malevitis has elected to omit substantially all of the disclosures and the statement of cash flows required by generally accepted accounting principles."**

ECF No. 76-3 at 2 (emphasis added), attached as Green Ex. 7.  Fed. R. Civ. P. 37(c)(1) provides that "[i]f a party fails to provide information … as required," "the party is not allowed to use that information."  It also permits the Court to, in its discretion, "direct[] that the matters embraced in the [failure to provide information] … be taken as established for purposes of the action" and "prohibit[ a party] from supporting or opposing designated claims." Fed. R. Civ. P. 37(c)(1)(C), incorporating 37(b)(2)(A)(i) and (ii).  Here, because they have not provided net worth information, the Court should not permit Defendants to raise net worth-related defenses on this motion or at all.

[3] Judge Komitee's Order on the order of disposition in this case noted that "questions remain as to which theory of FDCPA liability Plaintiff will pursue class-wide."  ECF No. 75 at 3.  Because Defendants have conceded Section 1692g(a)(1) liability, there is no need – and indeed, Plaintiff has no right – to pursue another theory (though

I.       **Plaintiffs and the Class Will Prevail on Their Substantive Claims.**

A.           Defendants Have Conceded FDCPA Liability.

"The FDCPA was enacted to eliminate abusive debt collection practices by debt

collectors." *Sykes v. Mel S. Harris & Associates LLC*, 780 F.3d 70, 82 (2d Cir. 2015) (internal

quotations omitted); *see also Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich, L.P.A.*, 559 U.S.

573 (2010); 15 U.S.C. § 1692(e).  To help achieve this goal, the FDCPA broadly prohibits debt

collectors from, *inter alii,* using "any false, deceptive, or misleading representation[s]," as well as

any "unfair or unconscionable means" in the collection of consumer debts.  *See* 15 U.S.C. §§

1692(e)-1692(f); *Heintz v. Jenkins*, 514 U.S. 291, 292-3 (1995).  "The Act is a strict liability

statute, and the degree of a defendant's culpability may only be considered in computing

damages." *Ellis v. Solomon & Solomon, P.C.*, 591 F.3d 130, 135 (2d Cir. 2010) (quotations

omitted); *Clomon v. Jackson*, 988 F.2d 1314, 1320 (2d Cir. 1993).

Defendants have conceded that the letter they sent to Plaintiff violated the FDCPA by

failing to state any amount of debt.  *See* Answer ¶ 69.  Defendants have also conceded that they

sent 19,355 identical letters – without any amount of debt – to other consumers that fall within

the Class definition.  Green Ex. 4 (identifying that 19,355 "form letters" lacking an "amount of

debt" were sent in the relevant period).  Thus, if the Court certifies the Class, the case can

proceed to judgment on the FDCPA claims without delay.

B.           Defendants' Conduct Also Violated New York State Law.

Defendants' conduct is separately actionable under to NYGBL § 349, which prohibits

"[d]eceptive acts and practices in the conduct of any business, trade or commerce or in the

---

Plaintiff's NYGBL claim is based on largely the same facts as her Section 1692e claim).  *See Chudomel v Dynamic Recovery Servs.*, 2013 US Dist LEXIS 160226, at *10- 15 (EDNY Sep. 11, 2013, No. 12-CV-5365 (NGG) (RLM)), *citing Ellis v. Solomon & Solomon, P.C.*, 591 F.3d 130, 133 (2d Cir. 2010) ("[t]he FDCPA is a strict liability statute, and even a single violation of the statute is sufficient to establish liability.").  And, to the extent her choice is relevant, Plaintiff is also electing to pursue Section 1692g(a)(1) liability.

furnishing of any service in this state."

A *prima facie* NYGBL § 349 violation is established upon proof that a defendant engaged in a consumer-oriented act or practice that was deceptive or misleading in a material way, that causes injury. *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 25 (N.Y. 1995); *see also Ellis v. Cohen & Slamowitz, LLP*, 701 F. Supp. 2d 215, 223 (N.D.N.Y. 2010) (allowing claim to proceed supplemental to FDCPA claim). NYGBL § 349 allows recovery for victims of deceptive statements made in connection with the collection of a debt. *See, e.g., Samms v. Abrams*, 163 F. Supp. 3d 109, 117 (S.D.N.Y. 2016); *Campbell v. MBI Assocs., Inc.*, 98 F. Supp. 3d 568, 587 (E.D.N.Y. 2015); *Aghaeepour v. N. Leasing Sys.*, 2015 U.S. Dist. LEXIS 161018, at *45 (S.D.N.Y. Dec. 1, 2015). Defendants' failure to disclose the lack of any attorney review in the letters sent to class members gives rise to a cause of action under GBL § 349 – in particular because Defendants make no effort to review the letters for compliance with the law or validity of the debt in the first instance – which, of course, the use of a law firm's letterhead and attorney's signature implies. *See Madden v. Midland Funding, LLC*, 2017 U.S. Dist. LEXIS 27109, *55 (S.D.N.Y. Feb. 27, 2017) (certifying both FDCPA and GBL § 349 subclasses, where collection letters overstated amounts owed); Green Ex. 6 at 142:16-143:1; *and Clomon v. Jackson*, 988 F.2d 1314, 1321 (2d Cir. 1993) ("[t]he use of an attorney's signature on a collection letter implies that the letter is 'from' the attorney who signed it; it implies, in other words, that the attorney directly controlled or supervised the process through which the letter was sent … [and] that the attorney signing the letter formed an opinion about how to manage the case of the debtor to whom the letter was sent.").

One New York state court has, seemingly using NYGBL § 349, issued injunctions against FDCPA violative conduct, suggesting that New York law is best understood to treat the FDCPA's definition of "deceptive" conduct as co-extensive with the NYGBL's. *See, e.g., People v. Boyajian Law Offices, P.C.*, 17 Misc. 3d 1119(A), 1119A (Sup. Ct., N.Y. Cty. 2007) (discussing an FDCPA

claim for lack of attorney involvement and issuing an injunction "deceptive and illegal practices

violating **the Fair Debt Collection Protection Act**")[4] (emphasis added).  And, indeed, in

determining what the NYGBL bars as "deceptive," it uses "a more stringent standard than the

'least sophisticated consumer' standard applicable to FDCPA claims." *Fritz v. Resurgent Capital*

*Servs, LP*, 955 F. Supp. 2d 163, 174 (E.D.N.Y. 2013).  Thus, because Defendants' letters contain no

disclaimer that an attorney has *not* reviewed a consumer's file, but are sent on law firm letterhead

and do not reflect any meaningful review, they are "deceptive" under the NYGBL.  *See, e.g.,*

*Moukengeschaie v Eltman, Eltman & Cooper, P.C.*, 2016 US Dist LEXIS 43725, at *56-57 (EDNY

Mar. 31, 2016) ("To avoid violating section 1692e(3), a debt collection letter that appears with an

attorney's signature must reflect 'meaningful attorney involvement'").  *See also, Clomon v. Jackson*,

988 F.2d 1314, 1321 (2d Cir. 1993); *Vincent v Money Store*, 736 F3d 88, 97, n 6 (2d Cir 2013); *Miller v*

*Wolpoff & Abramson, L.L.P.*, 321 F3d 292, 306 (2d Cir 2003).  Thus, if the Court certifies the

NYGBL Subclass, Plaintiff and the Subclass will be entitled to an injunction – as well as potential

increased damages for "willful[] or knowing[] violat[ion]" of the NYGBL.  *See* NYGBL 349(h).

## II.    The Court Should Certify Both the FDCPA Subclass and the NYGBL Subclass.

This case exemplifies a case warranting class action treatment – a group of several

thousand class members injured by a common course of conduct and asserting claims raising

common questions of law and fact.  The sheer number of claims arising out of Defendants'

standardized complaints makes class aggregation especially appropriate – as does the fact that,

because of how slowly this case has moved, no class member has any viable FDCPA claim that

is not time barred.

---

[4] For clarity, the significance of this point is that the FDCPA proper does not allow injunctive relief except in actions brought by the FTC.  *See, e.g., Sparkman v. Zwicker & Assocs., P.C.*, 374 F. Supp. 2d 293, 298 (E.D.N.Y. 2005) (noting "multiple district courts in this circuit have likewise held that equitable relief is not available to private litigants" under the FDCPA and collecting authority); 15 U.S.C. § 53(b).

For a class to be certified, a plaintiff must meet the well-known requirements of Rule 23(a):  "numerosity, commonality, typicality, and adequacy of representation."  *Sykes v Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 80 (2d Cir. 2015).  "In addition, while Rule 23(a) does not expressly require that a class be definite in order to be certified, a requirement that there be an identifiable class has been implied by the courts.  This requirement is often referred to as 'ascertainability.'"  *Dunnigan v Metro. Life Ins. Co.*, 214 F.R.D. 125, 135 (S.D.N.Y. 2003) (internal quotations and citations omitted).  Finally, the plaintiff "must [also] show that the action is maintainable under Rule 23(b)(1), (2), or (3)."  *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 613-14 (1997); *In re Initial Public Offerings Securities*, 471 F.3d 24, 31 (2d Cir. 2006).

"The Second Circuit has emphasized that Rule 23 should be given liberal rather than restrictive construction and has shown a general preference for granting rather than denying class certification." *Massey v. On-Site Mgr., Inc.*, 285 F.R.D. 239, 244 (E.D.N.Y. 2012) (internal quotations omitted); *see also Marisol A. by Forbes v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997).

Here, Plaintiff meets all requirements under Rule 23(a), and meets the requirements to certify a hybrid class under both Rule 23(b)(2) and (b)(3).

A.    Rule 23(a)(1): Joining Thousands of Individual Suits Is Impracticable.

The proposed Class meets the numerosity requirement of Rule 23(a)(1).  Defendants have acknowledged the FDCPA Subclass has 19,355 members, and that the NYGBL Subclass is sufficiently numerous.  Green Ex. 4; Dec. ¶ 10.  *See also*, *e.g.*, *In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 278 (S.D.N.Y. 1999) (numerosity requirement met where potential class exceeded 20,000 members); *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 451 (S.D.N.Y. 2004); *Bitzko v. Weltman, Weinberg & Reis Co., LPA*, No. 1:17-CV-00458 (BKS/DJS), 2019 U.S. Dist. LEXIS 161495, at *44-45 (N.D.N.Y. Sep. 23, 2019).

The numerosity element requires the class to be "so numerous that joinder of all members

is impracticable." *Sykes*, 780 F.3d at 80, *quoting* Fed. R. Civ. P. 23(a)(1).  And "[i]mpracticable does not mean impossible." *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993).  Even though "there is no magic number that breathes life into a class," *Clarkson v Coughlin*, 783 F. Supp. 789, 798 (S.D.N.Y. 1992), "numerosity is presumed at a level of 40 members." *Consol. Rail Corp. v Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995); *see also Leone v. Ashwood Fin., Inc.*, 257 F.R.D. 343, 351-52 (E.D.N.Y. 2009) (117 class members sufficient).

Given that there are 19,355 FDCPA Subclass members, and Defendants concede the NYGBL Subclass is sufficiently numerous, numerosity exists here.

**B.**      Defendants' Boilerplate Letters Raise Common Issues of Law and Fact.

Because Plaintiff's claims stem from uniform conduct by Defendants – the mailing of boilerplate letters all reflecting no attorney or file review, and containing no amount of any debt – common issues of both law and fact are pervasive in this action.[5]

Rule 23(a)(2) requires "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2); *Marisol*, 126 F.3d at 376.  "Commonality does not mean that all issues must be identical as to each member." *Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 156 (S.D.N.Y. 2008).  Instead, the "commonality prerequisite is satisfied if there is a common issue that drives the resolution of the litigation such that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Sykes*, 780 F.3d at 84, *quoting Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).  "Generally, courts have liberally construed the commonality requirement to mandate a minimum of one issue common to all class members." *Trief v. Dun & Bradstreet Corp.*, 144 F.R.D. 193, 198 (S.D.N.Y. 1992).  "Rule 23(a)(2) requires only that questions of law or fact be shared by the prospective class.  It

---

[5] Commonality and typicality often overlap.  *See Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 n.5 (2011).  That said, Plaintiff will address each separately for completeness.

does not require that *all* questions of law or fact raised be common." *Halford v. Goodyear Tire & Rubber Co.*, 161 F.R.D. 13, 18 (W.D.N.Y. 1995), *citing Dura-Bilt Corp. v. Chase Manhattan Corp.*, 89 F.R.D. 87, 93 (S.D.N.Y. 1981) (emphasis in original). "The [] standard for meeting the Rule 23(a)(2) prerequisite is qualitative rather than quantitative – that is, there need be only a single issue common to all members of the class." 1 Herbert Newberg & Alba Conte, *Newberg on Class Actions* § 3.10 (3d ed. 1992); *see also, Port Auth. Police Benevolent Ass'n v. Port Auth. of N.Y. & N.J.*, 698 F.2d 150, 153-54 (2d Cir. 1983).

"Many courts have found the predominance and commonality requirements satisfied, and class certification therefore appropriate, where it is the defendant's use of standardized debt collection letters that has given rise to a plaintiff's FDCPA claims." *Passeggio v. Cosmetique Inc.*, CV-98-1774 (CPS), 1999 U.S. Dist. LEXIS 7607, at *27-28 (E.D.N.Y. Apr. 30, 1999). *See, for more, Sykes*, 780 F.3d at 84 (standardized affidavits demonstrated "unitary course of conduct" that caused common injury); *Vincent v. Money Store*, 304 F.R.D. 446, 455 (S.D.N.Y. 2015) (assessing whether mailings "violated the FDCPA on a classwide basis would generate common answers for the class."); *Vu v. Diversified Collection Servs.*, 293 F.R.D. 343, 353 (E.D.N.Y. 2013); *Annunziato v. Collecto, Inc.*, 293 F.R.D. 329, 336 (E.D.N.Y. 2013) ("the resolution of this action will rest on whether or not the Defendant's alleged conduct in sending the form letters violated numerous provisions of the FDCPA."); *Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*, 237 F.R.D. 26, 32 (E.D.N.Y. 2006); *Macarz v. Transworld Sys., Inc.*, 193 F.R.D. 46, 49 (D. Conn. 2000); *Labbate-D'Alauro v. GC Servs. Ltd. Pshp.*, 168 F.R.D. 451, 456 (E.D.N.Y. 1996) ("In cases where FDCPA plaintiffs have received similar debt collection letters from the defendants' mailing as the basis of the lawsuit, courts have found common questions of law or fact sufficient to certify the class."); *see also Swanson v. Mid Am, Inc.*, 186 F.R.D. 665, 668 (M.D. Fla. 1999) ("To establish commonality, it is sufficient that Plaintiff allege that all class members received the same letter.")

This case is no different from the many FDCPA cases cited above. The crux of the proposed Class' legal claims hinges on the common legal question of whether boilerplate letters violate federal and state consumer protection laws (and, on the FDCPA claim, at least, Defendants have even admitted liability). Thus, resolution of the dispositive legal questions "will resolve an issue that is central to the validity of each one of the claims in one stroke." *Sykes*, 780 F.3d at 84. Defendants do not dispute the existence of commonality as to Plaintiff's claim.

Commonality is therefore satisfied here.

       C.       Plaintiff's Claims Are Typical of the Class.

Rule 23(a)(3) of the Federal Rules of Civil Procedure requires that the claims of the named plaintiff be typical of the claims of the class. "Typicality requires that the claims of the class representative be typical of those of the class, and is satisfied when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *Robinson v. Metro– N. Commuter R.R. Co.*, 267 F.3d 147, 155 (2d Cir. 2001). In other words, typicality exists when the "defendants committed the same wrongful acts in the same manner against all members of the class." *Heresi v. Citigroup Inc.*, 366 F.3d 70, 82 (2d Cir. 2004) (quotations omitted). When the same "unlawful conduct was directed at both the named plaintiff and the class to be represented, the typicality requirement is usually met irrespective of varying fact patterns which underlie individual claims." 1 Newberg, *supra*, § 3.13 (3d ed. 1992); *see also Dura-Bilt Corp. v. Chase Manhattan Corp.*, 89 F.R.D. 87, 99 (S.D.N.Y. 1981).

Here, typicality is in the Class (and subclass) definition(s): each Class member was sent a letter by Defendants in relation to the collection of a debt that took the same form and represented the same (lack of) review process. Thus, the typicality requirement of Rule 23(a)(3) is satisfied because each Class member was, by definition, subjected to the same treatment.

D.        Plaintiff and Her Counsel Will Adequately Protect the Interests of the Class

Plaintiff and her counsel adequately represent the proposed Class.  Under Rule 23(a)(4),

adequacy of representation is measured by two standards.  "First, class counsel must be

'qualified, experienced and generally' able to conduct the litigation."  *See Halford*, 161 F.R.D. at

19.  Second, the class members must not have interests that are "antagonistic to one another."

*Id.* at 19 (quotation marks omitted); *see also County of Suffolk v. Long Island Lighting Co.*, 710 F. Supp.

1407, 1413 (E.D.N.Y. 1989), *aff'd,* 907 F.2d 1295 (2d Cir. 1990); *Labbate-D'Alauro v. GC Servs. Ltd.*

*Pshp.*, 168 F.R.D. 451, 457 (E.D.N.Y. 1996); *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222

F.3d 52, 60 (2d Cir. 2000).  Both prongs are satisfied here.

Ms. Rudler is an adequate representative plaintiff for the proposed Class.  She both fits

the class definition and understands her responsibilities as the class representative.  *See generally*,

Rudler Dec. ¶¶ 2-15.  Given the identical nature of the claims between Ms. Rudler and the class

members, there is no potential for conflicting interests.  Thus, she can adequately represent the

class.

Similarly, Plaintiff's counsel are capable of adequately representing the Class here.  They

are well-respected members of the bar with FDCPA experience and experience in other, high

profile class actions.[6]  *See* Green Dec. ¶¶ 12 - 21; Massimi Dec. ¶¶ 7-10.  When evaluating the

suitability of counsel under Rule 23(a)(4), courts consider "whether the counsel is willing and

able to vigorously prosecute the action."  7A Charles Alan Wright & Arthur R. Miller, *Federal*

*Practice & Procedure* § 1769.1 (3d ed. 2005).  A brief look at the docket and history here should

---

[6] *See, e.g., Jones v. United States Postal Service*, 20-cv-6516 (SDNY 2020) (national voting rights class action where counsel acted as lead counsel, obtaining nationwide injunction regarding slowdowns in postal service); *Gallagher v. N.Y. State. Bd. of Elections,* 20-cv-5504 (SDNY 2020) (New York State voting rights class action where counsel acted as lead counsel, obtaining statewide injunction regarding ballots missing postmarks); *Yang v. N.Y. State Bd. of Elections*, 20-cv-3325 (SDNY 2020) (statewide class action where counsel represented intervening plaintiffs, obtaining statewide injunction regarding cancellation of the Democratic Presidential Primary), *aff'd sub. nom. Yang v. Kosinski*, 960 F.3d 119 (2d Cir. 2020).

answer that question.  For competence and ability, the Court may look to the papers filed to

date, as well as counsel's other experience in class (and non-class) litigation.  Green Dec. ¶ 16;

Massimi Dec. ¶¶ 7-10.  Further, at this point in the case, all the really remains if the Court grants

certification is the mechanical (if labor-intensive) task of sending class notices, and then the

(potentially difficult) task of collecting the conceded judgment.  Counsel submit they have

shown they are up to those tasks.[7]

Plaintiff requests that she be appointed as class representative, and that her attorneys,

Cohen&Green P.L.L.C. (and specifically, Remy Green) be appointed as class counsel.

E.        Plaintiff Proposes an Ascertainable Class With Objective Criteria.

Plaintiff's proposed class meets the implied "ascertainability" requirement for certification.

"An identifiable class exists if its members can be ascertained by reference to objective criteria."

*In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 209 F.R.D. 323, 337 (S.D.N.Y. 2002); *Dunnigan*,

214 F.R.D. at 135; *Jeffries v. Pension Trust Fund of the Pension, Hospitalization & Benefit Plan of the Elec.

Indus.*, 2007 U.S. Dist. LEXIS 61454, *41 (S.D.N.Y. Aug. 20, 2007).  Here, the relevant objective

criteria are clear in Plaintiff's proposed Class definition.  The Class members are defined by

having received letters from Defendants, and can be identified using documents Defendants

have described.  *See* Green Ex. 6 at 22:22-23:15; 24:1-6; 42:15-20.[8]

The subclasses only differentiate by statute of limitations – and, of course, the NYGBL

Subclass only contains New Yorkers.  Consumers either (1) received a letter within a year before

the filing for this case or (2) received a letter within three years before the filing and the instant

---

[7] In the alternative, if the Court prefers, we will gladly confer with other counsel on this action.  To that end, as explained in the Green Declaration, a friend far more experienced specifically in FDCPA class actions has offered to appear if the Court believes our firm needs help.  *See* Green Dec. ¶ 19.

[8] Defendants objected (correctly) to producing information that would identify members of the Class prior to certification, citing *Krentel v. Sokoloff*, Order, ECF No. 16, 15-cv-187 (JS) (ARL) (EDNY 2015), *citing in turn, Charles v. Nationwide Mut. Ins. Co.*, No. 09-CV-94, 2010 U.S. Dist. LEXIS 143487, at *13 (EDNY May 27, 2010) (following the "prevailing view in this district" and refusing to "allow discovery of class members' identities at the pre-certification stage") (cleaned up).  Plaintiffs agreed not to seek this information prior to certification of the Class.

Complaint.  Classes have been found ascertainable enough under precisely such circumstances. *See, e.g.*, *Madden*, 2017 U.S. Dist. LEXIS 27109, at *45.  These fully objective criteria meet the ascertainability requirement for class certification.

        F.          <u>A Class Action Is A Superior Method for Adjudicating This Controversy</u>

A class action certified under Rule 23(b)(3) must be "superior to other available methods for the fair and efficient adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3).  Four factors, identified in Rule 23(b)(3), help guide the determination of whether the class mechanism is superior: "individual control of litigation, prior actions involving the parties, the desirability of the forum, and manageability."[9]  *Sykes*, 780 F.3d at 82; *see also* Fed. R. Civ. P. 23(b)(3)(A)-(D).  The policy underlying this superiority requirement, and "at the very core of the class action mechanism [more generally,] is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights."  *Sykes*, 780 F.3d at 81, *quoting Amchem*, 521 U.S. at 617.  Indeed, "[c]lass actions are often the most suitable method for resolving suits to enforce compliance with consumer protection laws because the awards in an individual case are usually too small to encourage the lone consumer to file suit."  *Colbert v. Trans Union Corp.*, 1995 U.S. Dist. LEXIS 578, at *9 (E.D. Pa. Jan. 12, 1995).  *See also, Labbate-D'Alauro v. GC Servs. Ltd. Pshp.*, 168 F.R.D. 451, 458 (E.D.N.Y. 1996).

     "Suits brought under the FDCPA such as this case [concerning the use of standardized documents] regularly satisfy the superiority requirement of Rule 23."  *In re Risk Mgmt. Alternatives, Inc.*, 208 F.R.D. 493, 507 (S.D.N.Y. 2002); *see also Sykes*, 780 F.3d at 93 (an FDCPA class action "is, without question, more efficient than requiring thousands of debtors to sue individually"); *Hallmark v. Cohen & Slamowitz, LLP*, 293 F.R.D. 410, 419 (W.D.N.Y. 2013); *Kalish v. Karp &*

---

[9] "[W]hile these factors, structurally, apply to both predominance and superiority, they more clearly implicate the superiority inquiry." *Sykes*, 780 F.3d at 82.

*Kalamotousakis, LLP*, 246 F.R.D. 461, 464 (S.D.N.Y. 2007) ("litigating as a class is superior to litigating individual FDCPA claims."); *Petrolito v. Arrow Fin. Servs., LLC*, 221 F.R.D. 303, 314 (D. Conn. 2004) ("[s]uits brought under the FDCPA such as this case regularly satisfy the superiority requirement").

As the court in *Sykes* explained, FDCPA "class members' interest [] in litigating separate actions is likely minimal given their potentially limited means with which to do so and the prospect of relatively small recovery." *Sykes v. Mel Harris & Assocs. LLC*, 285 F.R.D. 279, 294 (S.D.N.Y. 2012), *aff'd*, 780 F.3d 70 (2d Cir. 2015). "It is appropriate for the court to consider 'the inability of the poor or uninformed to enforce their rights and the improbability that large numbers of class members would possess the initiative to litigate individually.'" *Labbate-D'Alauro v. GC Servs. Ltd. Pshp.*, 168 F.R.D. 451, 458 (E.D.N.Y. 1996), *citing Haynes v. Logan Furniture Mart, Inc.*, 503 F.2d 1161, 1164-65 (7th Cir. 1974). And the same is true for the FDCPA's "short statute of limitations. *Haynes*, 503 F.2d at 1164-65. The bottom line is that class litigation is best where it is the better mode of protecting the interests of the least sophisticated consumers.

Here, many class members are unlikely to have the knowledge that Defendants' letters violate the FDCPA and the NYGBL and that a legal claim even exists, much less the funding and motivation to pursue that claim for only a limited statutory damages award. The limited individual damages under these statutes means that any Class member's interest in individual control over the litigation is likely minimal. *See Sykes*, 780 F.3d at 93. Manageability concerns also heavily favor the class action mechanism here because it would be more efficient to decide the single set of facts and single theory for liability in one case, rather than having litigants reinvent the wheel in tens of thousands of individual cases. And as a practical matter, no member of the Class even *has* a non-time barred FDCPA claim anymore, so the only way for such members of the Class to enforce their rights is through this action.

16

The superiority requirement for Rule 23(b)(3) certification is met.

G.          Common Questions of Law and Fact Predominate

"Suits brought under the FDCPA such as this case [concerning the use of standardized documents] regularly satisfy the superiority requirement of Rule 23." *In re Risk Mgmt. Alternatives, Inc.*, 208 F.R.D. at 507. "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. The predominance requirement is satisfied "if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Myers v. Hertz Corp.*, 624 F.3d 537, 547 (2d Cir. 2010) (citations omitted).

Because of the standardized nature of Defendants' conduct in this case – the use of boilerplate, letters sent to thousands of class members – common questions far predominate over individualized claims.

H.          Class-Wide Injunctive and Declaratory Relief Is Warranted.

Certification under Rule 23(b)(2) is appropriate when the opposing party has "acted [] on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). "The key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted – the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Dukes*, 131 S. Ct. at 2557 (internal quotations and citations omitted). The ultimate relief afforded class members under Rule 23(b)(2) need not be identical, only beneficial. *Sykes*, 780 F.3d at 97.

Classes in many FDCPA actions have been certified under Rule 23(b)(2). *See, e.g.*, *Sykes* 780 F.3d at 97-8; *Madden*, 2017 U.S. Dist. LEXIS 27109, at *47-51; *Foti v. NCO Fin. Sys.*, 2008 U.S.

Dist. LEXIS 16511 (S.D.N.Y. Feb. 19, 2008); *del Campo v. Am. Corrective Counseling Servs., Inc.*, 254 F.R.D. 585, 595-96 (N.D. Cal. 2008); *Hunt v. Check Recovery Sys.*, 241 F.R.D. 505, 512-13 (N.D. Cal. 2007); *Swanson v. Mid Am, Inc.*, 186 F.R.D. 665 (M.D. Fla. 1999); *Borcherding-Dittloff v. Transworld sSys., Inc.*, 185 F.R.D. 558, 565-66 (W.D. Wis., 1999); *Gammon v. GC Services Ltd. Partnership*, 162 F.R.D. 313, 319-322 (N.D. Ill. 1995).

Because Defendants uniformly do include amounts of debt in collection letters – and uniformly do not engage in meaningful attorney review of individual files – certification under Rule 23(b)(2) is appropriate.

        I.        <u>Class Certification As a Hybrid Class Under Rules 23(b)(2) and (3) Is Appropriate</u>

Plaintiff requests class certification under both Rule 23(b)(2) and Rule 23(b)(3). Hybrid class actions, such as this, have been certified where the proposed class independently meets the requirements for certification under both Rules 23(b)(2) and (b)(3). *See Sykes*, 780 F.3d at 80-2; *McAnaney v. Astoria Fin. Corp.*, 2006 U.S. Dist. LEXIS 66941 (E.D.N.Y. Sept. 19, 2006) (granting class certification under (b)(2) and (b)(3)); *Madden*, 2017 U.S. Dist. LEXIS 27109, at *55-57 (same); *Bracamonte v. Eskanos & Adler*, 2004 U.S. Dist. LEXIS 8520, *15 (N.D. Cal., May 7, 2004) ("the [23(b)(2) and 23(b)(3)] class action will protect the rights of individual class members who are unable or unwilling to protect themselves."); *del Campo*, 254 F.R.D. at 595- 96; *Hunt*, 241 F.R.D. at 512-13. Thus, the combination of Rule 23(b)(2) for declaratory relief and Rule 23(b)(3) for monetary damages is appropriate. *Schwarm v. Craighead*, 233 F.R.D. 655, 663 (E.D. Cal. 2006); *Irwin v. Mascott*, 96 F. Supp. 2d 968 (N.D. Cal. 1999).

Plaintiff and the Class will seek declaratory and injunctive relief, as well as actual and statutory damages, so the combination of Rule 23(b)(2) for equitable relief and Rule 23(b)(3) for monetary damages is appropriate.

## <u>CONCLUSION</u>

For these reasons, Plaintiff Britney Rudler respectfully requests that the Court certify this action as a class action, appoint her as class representative, and appoint Cohen&Green P.L.L.C. as class counsel.

Dated:  September 30, 2020.

Respectfully Submitted,


/s/
_____
J. REMY GREEN
*honorific / pronouns: Mx. / they, their, them*
JESSICA MASSIMI
*honorific / pronouns: Ms. / she, her, hers*
Cohen&Green P.L.L.C.
1639 Centre Street, Suite 216
Ridgewood, NY 11385
(929) 888.9480 (telephone)
(929) 888.9457 (facsimile)
remy@femmelaw.com