**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

BRITNEY RUDLER, *on behalf of herself and all others similarly situated,*

　　　　　　　　　　*Plaintiff,*

　　　　v.

MLA Law Offices, LTD., and John L. Malevitis,

　　　　　　　　　*Defendants*

**19-CV-2170 (ERK) (LB)**

---

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS

---

J. Remy Green
Jessica Massimi
**COHEN&GREEN P.L.L.C.**
*Attorneys for Plaintiff*
1639 Centre St., Suite 216
Ridgewood (Queens), New York 11385
t : (929) 888-9480
f : (929) 888-9457
e : remy@femmelaw.com

November 26, 2020

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ..................................................................................................... ii

TABLE OF AUTHORITES ............................................................................................... iii

ARGUMENT ..................................................................................................................... 1

   I.   As a Prevailing Party, Plaintiff is Entitled to Her Full Attorneys' Fees and Costs. ........... 1

   II.   Plaintiff is Entitled to Fees for this Application. ............................................................. 2

   III.   Counsel's Time on This Matter Was Reasonable. ......................................................... 3

   IV.   The Lodestar Calculation. ............................................................................................. 6

   a.   Standards. ....................................................................................................................... 6

   b.   Rates in the Eastern District of New York .......................................................................... 8

   c.   Plaintiffs should be granted her costs. ................................................................................ 9

   V.   The Court Should Allow Plaintiff the Remedy of Corporate Veil-Piercing..................... 10

   a.   Background Facts............................................................................................................. 10

   b.   Analysis........................................................................................................................... 12

CONCLUSION................................................................................................................. 16

# TABLE OF AUTHORITES

**Page(s)**

## Cases

*Barbour v. City of White Plains*,
2013 U.S. Dist. LEXIS 144924 (SDNY 2013) ........................................................4

*Blum v. Stenson*,
465 U.S. 886 (1984) ................................................................................................8

*In re Cabrini Med. Ctr.*,
No. 09-14398 (ALG), 2012 Bankr. LEXIS 2747 (Bankr. S.D.N.Y. June 15,
2012) ......................................................................................................................13

*Carter v. City of New York, et al.*,
18 Civ. 360 (ER) ECF No. 36 ................................................................................8

*Dowdell v. Imhof*,
No. 10-CV-1332 (SJF) (ARL), 2016 U.S. Dist. LEXIS 21781 (EDNY Feb. 23,
2016), *aff'd Dowdell v. Imhof*, 2017 U.S. App. LEXIS 1012 (2d Cir. N.Y.,
Jan. 20, 2017) ..........................................................................................................2

*Feltzin v. Union Mall LLC*,
393 F. Supp. 3d 204 (E.D.N.Y. 2019) .....................................................................9

*Foster v. Kings Park Central Sch. Dist.*,
174 F.R.D. 19 (E.D.N.Y. 1997) ..............................................................................7

*Fox v. Vice*,
563 U.S. 826 (2011) ................................................................................................3

*Francisco v Midland Funding, LLC*,
2019 US Dist LEXIS 42349 (ND Ill Mar. 15, 2019) ..............................................5

*FTC v 4 Star Resolution, LLC*,
2015 U.S. Dist LEXIS 157736 (WDNY Nov. 21, 2015) .........................................5

*Gagne v. Maher*,
594 F.2d 336 (2d Cir. 1979), *aff'd*, 448 U.S. 122 (1980) ........................................2

*Gierlinger v. Gleason*,
160 F.3d 858 (2d Cir. 1998) ....................................................................................7

*Hernandez v. Kaisman*,
139 A.D.3d 406 (1st Dept. 2016) .........................................................................3, 4

*ITEL Containers Int'l Corp. v. Atlanttrafik Express Serv., Ltd.*,
   909 F.2d 698 (2d Cir. 1990)................................................................13

*John v. Demaio*,
   2016 U.S. Dist. LEXIS 177578 (E.D.N.Y. Dec. 21, 2016) ......................2

*Johnson v City of NY*,
   2016 US Dist LEXIS 17088 (EDNY Jan. 30, 2016) ..............................4

*Kittay v. Flutie N.Y. Corp. (In re Flutie N.Y. Corp.)*,
   310 B.R. 31 (Bankr. S.D.N.Y. 2004).....................................................15

*LeBlanc-Sternberg v. Fletcher*,
   143 F.3d 748 (2d Cir. 1998)...................................................................8

*LiButti v. United States*,
   107 F.3d 110 (2d Cir. 1997).................................................................14

*Lilly v. City of N.Y.*,
   934 F.3d 222 (2d Cir. 2019)...................................................................2

*Pisculli v. T.S. Haulers, Inc. (In re Pisculli)*,
   426 B.R. 52 (E.D.N.Y. 2010) ...............................................................15

*Randle v. H&P Capital, Inc.*,
   Civil Action No. 3:09cv608, 2010 U.S. Dist. LEXIS 74994 (E.D. Va. July 21,
   2010) .......................................................................................................4

*Reed v. A.W. Lawrence & Co.*,
   95 F.3d 1170 (2d Cir. 1996)...................................................................2

*Restivo v. Hessemann*,
   846 F.3d 547 (2d Cir. 2017)...............................................................3, 6

*Riverside v. Rivera*,
   477 U.S. 561 (1986)................................................................................7

*Rosado v. City of N.Y.*,
   2012 U.S. Dist. LEXIS 35249 (S.D.N.Y. 2012)......................................2

*Ryan v Allied Interstate, Inc.*,
   882 F Supp 2d 628 (SDNY 2012)...........................................................8

*Savino v. Comput. Credit*,
   164 F.3d 81 (2d Cir. 1998)......................................................................1

*Simmons v. NY. City Transit Auth.*,
   575 F.3d 170 (2d Cir. 2009)................................................................7, 8

*Smart v. City of N.Y.*,
No. 15-CV-1405 (RRM)(PK), 2017 U.S. Dist. LEXIS 24602 (E.D.N.Y. Feb. 17, 2017) ..................................................................................................................7

*Thomas v. City of New York*,
14-cv-7513 (ENV) (VMS), 2017 WL 6033532 (E.D.N.Y. Dec. 1, 2017) ...........................8, 9

*United States v. Am. Univ. of Beirut*,
2017 U.S. Dist. LEXIS 132269 (S.D.N.Y. 2017) .....................................................8

*United States v. Coppola*,
No. 95-6030, 1995 U.S. App. LEXIS 39937, 77 A.F.T.R.2d (RIA) 1996-630
(2d Cir. Dec. 26, 1995) ..................................................................................16

*Williams v. Lovell Safety Mgmt. Co., LLC*,
71 A.D.3d 671 (2nd Dept. 2010) .....................................................................13

*Williamsburg Fair Hous. Comm. v. Ross-Rodney Hous. Corp.*,
599 F. Supp. 509 (S.D.N.Y. 1984).....................................................................4

*Wm. Passalacqua Builders v. Resnick Developers S.*,
933 F.2d 131 (2d Cir. 1991).....................................................................14, 15

**Statutes**

15 U.S.C. § 1692k.................................................................................................1, 2

42 U.S.C. § 1988.....................................................................................................7

Fair Debt Collection Practices Act ................................................................... *passim*

N.Y.G.B.L. § 349(h) .................................................................................................1

New York General Business Law.................................................................................1

Plaintiff Britney Rudler submits this memorandum of law in support of her motion for attorneys' fees and costs, arising from the successful litigation of her Fair Debt Collection Practices Act ("FDCPA") and New York General Business Law ("NYGBL") claims. As shown below, Plaintiff is entitled to $79,792.00 in attorneys' fees and costs, and the Court should order that Plaintiff is entitled to the equitable remedy of corporate veil-piercing in collecting that sum.

## ARGUMENT

### I.      As a Prevailing Party, Plaintiff is Entitled to Her Full Attorneys' Fees and Costs.

When a consumer "brings a successful FDCPA lawsuit," she may recover all of her costs and reasonable attorneys' fees. 15 U.S.C. § 1692k. *See also, Savino v. Comput. Credit*, 164 F.3d 81, 87 (2d Cir. 1998). After prolonged litigation, Defendants John Malevitis and his wholly owned law firm, MLA Law Offices, agreed to a settlement. *See* Green Ex. 1 ("Settlement," also filed at ECF No. 83). The Court so-ordered the Settlement, and this application follows in the time set by the Settlement. ECF No. 83.

The Settlement provides that "Plaintiff is a prevailing party by definition under the FDCPA and the GBL," and that "[a]s a prevailing party, Plaintiff is entitled to her attorneys' fees and costs under 15 U.S.C. § 1692k(a)(3) and GBL § 349(h)." Settlement ¶¶ 3-4. The Settlement clarifies that Plaintiff is entitled to full recovery of fees:

> Plaintiff shall be entitled to recover attorneys' fees for all time reasonably involved in this case, inclusive of time all spent on class-related discovery and class certification, as well as all other motions involved in litigating this case.

Settlement ¶ 5(a)-(d) (also stipulating that "Defendants shall not at any point assert that spending attorney time and costs on class-related discovery was unreasonable or unnecessary to litigate this case" and "Defendants shall not assert Plaintiff only achieved partial success, and for the purposes of Plaintiffs attorneys' fee application, Plaintiff's success shall be treated as

complete").[1]

Thus, Plaintiff has a right to recover her full fee.

## II.     Plaintiff is Entitled to Fees for this Application.

It is extremely well established that attorneys are entitled to compensation for "time reasonably spent … in establishing their fee" under fee-shifting statutes (like 15 U.S.C. § 1692k for the FDCPA). *Gagne v. Maher*, 594 F.2d 336, 344 (2d Cir. 1979), *aff'd*, 448 U.S. 122 (1980). *See also, Reed v. A.W. Lawrence & Co.*, 95 F.3d 1170, 1183-84 (2d Cir. 1996); *Dowdell v. Imhof*, No. 10-CV-1332 (SJF) (ARL), 2016 U.S. Dist. LEXIS 21781, at *9 (EDNY Feb. 23, 2016), *aff'd Dowdell v. Imhof*, 2017 U.S. App. LEXIS 1012 (2d Cir. N.Y., Jan. 20, 2017).

Moreover, as detailed below, Defendants have refused to negotiate fees at all – despite Plaintiff's offer of a steep discount to avoid needing to litigate this issue. That refusal to negotiate is unreasonable, making fees-on-fees even more appropriate. *Rosado v. City of N.Y.*, 2012 U.S. Dist. LEXIS 35249, at *22 (S.D.N.Y. 2012) ("[b]y not settling the attorneys' fees issue, [the defendant] was put on notice that time spent by counsel in seeking fees would become a component of 'reasonable attorney's fees.'").[2] *See also, John v. Demaio,* 2016 U.S. Dist. LEXIS 177578 (E.D.N.Y. Dec. 21, 2016). Here, the operative contract makes clear Plaintiff is entitled to all her attorney time spent on "all … motions involved in litigating this case," including the present one. Settlement ¶ 5(a).

---

[1] In the Settlement, Defendants reserved the right to challenge particular line items or rates in the fee application.

[2] *Rosado* discusses fees-on-fees in the context of a Rule 68 offer that expressly cut off fees as of the date of the offer. While *Rosado* has been abrogated in part as it relates to Rule 68 offers (*Lilly v. City of N.Y.*, 934 F.3d 222, 236 (2d Cir. 2019)), its equitable approach remains good law absent "clear terms of the parties' agreements barring such awards." 934 F.3d at 236.

2

**III.** **Counsel's Time on This Matter Was Reasonable.**

The Supreme Court has instructed that "the determination of fees should not result in a second major litigation." *Fox v. Vice*, 563 U.S. 826, 838 (2011) (quotation marks omitted). Rather, "[t]he fee applicant … must, of course, submit appropriate documentation to meet the burden of establishing entitlement to an award. But trial courts need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees … is to do rough justice, not to achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." *Restivo v. Hessemann*, 846 F.3d 547, 589 (2d Cir. 2017).

In the accompanying records, Plaintiff's counsel have provided contemporaneously maintained billing records. These records will allow the Court to evaluate the reasonableness of the time spent on this case. *Restivo*, 846 F.3d at 591; *and see also, Hernandez v. Kaisman*, 139 A.D.3d 406, 407 (1st Dept. 2016). And as provided in the Settlement, the Court should begin from a presumption that Plaintiff's counsel's time and judgments as to what issues to litigate were reasonable, and only reduce the application for (1) excessive time on a particular task or (2) if the requested rate is not an "appropriate rate for an attorney similarly situated in experience and handling of cases of this specific type in t e U.S. District Court for the Eastern District of New York." Settlement at 2-3.

In the brief negotiations, Plaintiff made an opening offer that waived all paralegal time and costs, and further offered to evaluate time at a discounted hourly rate. Green Dec. ¶ 31. Plaintiff provided Defendants with timesheets for that attorney time. Defendants' sole response was, "Your demand is based upon fees for two attorneys, which in my opinion will never pass muster for this type of case with the Court. Accordingly, the fee demand is rejected." Green Dec. ¶ 31. In another attempt to settle, given that Defendants apparent objection was only

overstaffing, Plaintiff *then* offered to discount all of Attorney Massimi's time – and ended the request by asking that Defendants "make a counter-offer, rather than rejecting settlement outright." *Id* ¶¶ 32-33. Defendants rejected both suggestions, with no legal justification, saying only that they believed neither MLA nor John Malevitis personally could satisfy a judgment.[3] *Id*.

Plaintiff seeks recovery for the time of two attorneys and one paralegal. "Multiple attorneys may be essential for planning strategy, eliciting testimony or evaluating facts or law." *Williamsburg Fair Hous. Comm. v. Ross-Rodney Hous. Corp*., 599 F. Supp. 509, 518 (S.D.N.Y. 1984). *See also, Randle v. H&P Capital, Inc*., Civil Action No. 3:09cv608, 2010 U.S. Dist. LEXIS 74994, at *14 (E.D. Va. July 21, 2010) ("use of two attorneys to represent a party is the norm for federal court litigation.") (citations omitted). In a case spanning nearly two years involving "litigation choices" by a defendant that significantly depart from "the norm," use of two attorneys to perform distinct, and non-overlapping tasks is reasonable. *Cf. Johnson v City of NY*, 2016 US Dist LEXIS 17088, at *10 (EDNY Jan. 30, 2016); *Barbour v. City of White Plains*, 2013 U.S. Dist. LEXIS 144924 at *13-15 (SDNY 2013) ("lack of clarity left Plaintiffs with no option but to research and prepare both possible theories.").

This case should have been a simple one. As the Court can see from the time sheets, had this case simply settled (or generated a Rule 68 offer) just after filing, the grand total time would have been no more than 3.8 hours. Green Ex. 2 at 6 (entry for 3.8 total hours related to filing the

---

[3] As the Court may recall, Defendant Malevitis refused to provide meaningful net worth information here, instead only sending a letter from his accountant all but explicitly stated he is hiding his assets. *See, e.g.*, ECF No. 76-3 at 3 (Defendants' accountant stating, "Mr. Malevitis has elected to omit substantially all of the disclosures and the statement of cash flows required by generally accepted accounting principles"). As explained further in Point V below, Mr. Malevitis has a wholly owned law firm that pays for all of his day-to-day expenses, with income that may well exceed $1,000,000.00 annually, and that amounts to his alter ego. And even without veil piercing, it is hard to see how that income stream does not create value in that law firm so that the value of the firm is attributable to its sole owner. That is, Mr. Malevitis could sell the firm to satisfy a judgment.

complaint, noting, "Discuss MLA with NDIL counsel (.3); call with client (.4); Draft Complaint and file (remainder)").  The further work – and the time that came with it – have all been incurred because of Defendants' litigation choices.  For example (Green Ex. 2 at 4),  counsel spent time preparing thorough materials about Defendants' initial Answer, which included 14 shotgun pled affirmative defenses.  At a pre-motion conference, the Court observed, "all but one of your affirmative defenses I think are improper and would likely have been stricken … if you're going to answer this complaint [once Plaintiff amends as discussed], it would behoove you to consider my advice here on that."  Green Ex. 4 at 19:3-22.  And even with that "advice," Defendants filed an amended answer that continued to assert improper defenses (though significantly fewer).  *See* ECF No. 53 at 21-23.[4]  Thus, Plaintiff was forced to brief the issue as reframed by the shuffled and reframed, but still improper defenses.  *See* ECF No. 54 at 1-2 (explaining why shuffled and reduced defenses remained improper).[5]  *See also,* ECF No. 79 (Defendants' then-attorney setting forth difficulties he had with Defendants: "there is simply no defense to the FDCPA claim based upon the failure to set forth the amount of a debt in a collection letter").

In sum, Defendants have strategically made a simple case difficult to litigate, by refusing to engage even on the most basic issues (and repeatedly making sanctions threats for no discernable reason).  It took *months* – as well as a third party subpoenas, the appearance of

---

[4] Once Defendant Malevitis (who is himself an attorney) retained outside counsel, his counsel removed all the defenses Defendants previous asserted and added one (proper) defense (failure to mitigate damages).  *See* ECF No. 60 at 6.

[5] Without seeking to relitigate the issue, but to highlight the kinds of arguments that needed to be made here, in the amended answer, Defendants shifted to asserting an "unclean hands" (which was not in the initial answer) defense to the FDCPA.  Courts have rejected that defense uniformly, because "[a]llowing an unclean hands defense would transform the rule from 'Debt collectors may not make false claims, period,' to 'Debt collectors may not make false claims, comma.'"  *Francisco v Midland Funding, LLC*, 2019 US Dist LEXIS 42349, at *8 (ND Ill Mar. 15, 2019).  *See also, FTC v 4 Star Resolution, LLC*, 2015 U.S. Dist LEXIS 157736, at *22 (WDNY Nov. 21, 2015).

experienced FDCPA defense counsel, and more than a dozen meet and confers and formal letters – to get even the most basic information in a putative FDCPA class action: the number of class members. Green Dec. ¶ 28. Even once they had experienced counsel, Defendants refused to accept a reasonable settlement, already negotiated by their attorney with Plaintiff, to the point of "destroy[ing]" the "attorney/client relationship" between Defendants and their attorney. ECF No. 79 at 1-2 (Defendants' counsel's letter describing those events). That is, as Defendants' former attorney noted, "Despite [his] efforts, Mr. Malevit[i]s rejected the individual settlement offers" that Plaintiff had made. *Id.* at 2.

In that context, spending significant attorney time on a case is reasonable (and indeed, the time spent here – particularly relative to the number of issues and motions that have been litigated – is on the light side). Reflecting that, the parties have already agreed that the time spent on "class-related discovery and class certification, as well as all other motions involved in litigating this case" will be recoverable, subject only to inquiry into whether the time was reasonable relative to the actual work product (and whether the rate is reasonable. Settlement at 2-3.

## IV.     **The Lodestar Calculation.**

### a.     Standards.

A reasonable fee is a sufficient fee to induce a capable attorney to undertake the representation of a meritorious civil rights case. The so-called "lodestar" method is the appropriate means to derive the fee award is through application of the lodestar method, multiplying the number of hours the Court finds reasonable by hourly rates the Court finds reasonable. That "lodestar method yields a fee that is perceptively sufficient to achieve [the fee shifting] objective." *Restivo*, 846 F.3d at 589.

"In calculating the lodestar amount, the rates used generally are the market rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Gierlinger v. Gleason*, 160 F.3d 858, 882 (2d Cir. 1998) (quotation marks omitted). "Courts should generally use the hourly rates employed in the district in which the reviewing court sits in calculating the presumptively reasonable fee." *Simmons v. NY. City Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009) (quotation marks omitted). "The district court must also bear in mind all of the case-specific variables that [the Second Circuit] and other courts have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate. Those factors include the attorney's experience and expertise and the overall success achieved in the case." *Smart v. City of N.Y.*, No. 15-CV-1405 (RRM)(PK), 2017 U.S. Dist. LEXIS 24602, at *5 (E.D.N.Y. Feb. 17, 2017) (quotation marks omitted), *citing Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany*, 522 F.3d 182, 190 (2d Cir. 2008).

Under a fee statute, a "reasonable hourly rate" is "one that grants the successful civil rights [— or, analogously, an FDCPA —] plaintiff a fully compensatory fee, comparable to what is traditional with attorneys compensated by a fee-paying client." *Foster v. Kings Park Central Sch. Dist.*, 174 F.R.D. 19, 26-27 (E.D.N.Y. 1997), *quoting Missouri v. Jenkins*, 491 U.S. 274, 286 (1989). As former Chief Justice Rehnquist observed, the reasonableness of a fee should be determined "in light of both the traditional billing practices in the profession, and the fundamental principle that the award of a 'reasonable' attorney's fee under § 1988 [— which employees the same standards as the FDCPA in fee litigation —] means a fee that would have been deemed reasonable if billed to affluent plaintiffs by their own attorneys." *Riverside v. Rivera*, 477 U.S. 561, 591 (1986) (Rehnquist, Ch. J., dissenting). Put otherwise, the lodestar rate is awarded at "prevailing market rates in the relevant community … governed by the same

standards which prevail in other types of equally complex Federal litigation, such as antitrust cases." *Blum v. Stenson*, 465 U.S. 886, 895 (1984).

                    b.   <u>Rates in the Eastern District of New York.</u>

This Court should apply rates applicable to the Eastern District of New York. *Simmons v. N.Y. City Transit Auth.*, 575 F.3d 170, 176 (2d Cir. 2009). *See also,* Settlement ¶ 5(d)(iii). To establish that rate, Courts may rely on both evidence submitted by the parties as to the rates they typically charge, as well as the Court's own knowledge of comparable rates charged by lawyers in the district. Moreover, "current rates, rather than historical rates, should be applied in order to compensate for the delay in payment." *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 764 (2d Cir. 1998). "In recent years, [attorneys'] fees have been awarded in the Eastern District of New York at an hourly rate of $300 to $450 for partners and $100 to $325 for associates in civil rights cases." *Thomas v. City of New York*, 14-cv-7513 (ENV) (VMS), 2017 WL 6033532, at *4 (E.D.N.Y. Dec. 1, 2017).[6]

Here Plaintiff seeks to have her counsel compensated at $375/hr (Green) and $400/hr (Massimi). *See* Green Dec. ¶ 5; Massimi Dec. ¶ 9.[7] While the Court has previous awarded fees

---

[6] Fee rates in the Eastern District of New York are awarded, in part, based on the premise that Brooklyn and Manhattan are separate legal markets. Thus, identical cases, litigated in courthouses a short train (or ferry) ride apart, often by exactly the same attorneys, will produce dramatically different fee awards. Thus, while it is not clear this premise is entirely well founded, this case is not the right vehicle to present the question. *See also,* Green Dec. ¶ 16-17, n. 3, *United States v. Am. Univ. of Beirut*, 2017 U.S. Dist. LEXIS 132269 at *3 (S.D.N.Y. 2017) ("Courts have previously questioned the wisdom and fairness of utilizing a prevailing rate that differs on average by more than $100.00 per hour depending on which side of the Brooklyn Bridge the court sits.") (cleaned up).

[7] While the Court previous set rates at $300/hr for counsel on a Rule 4 motion, that was in part because counsel had not "ma[d]e the required showing" as to hourly rates by putting together a full application (which would have been out of proportion to the needs of a Rule 4 motion). This motion provides full background and support for the requested rates for both attorneys working on this matter.

        Additionally, though Court would be within the range of ordinary discretion to award fees at $300/hr, it should not do so. While such lower rates may be appropriate in short, simple cases (*see, e.g.*, *Carter v. City of New York, et al.*, 18 Civ. 360 (ER) ECF No. 36 at 6, setting an attorney's rate for a "short simple matter" by reducing a $675/hr rate to $500/hr) or simple motions like the Rule 4 motion here, "higher hourly rates may be appropriate in hotly contested FDCPA cases" like this one. *Ryan v Allied Interstate, Inc*., 882 F Supp 2d 628, 635 (SDNY 2012).

in this case at $300/hr when counsel did not submit full documentation of their experience and qualifications, the requested rates are within the range for the district for attorneys of similar experience, and represent a discount from counsel's actual rates. *See* Green Dec. ¶¶ 16-17; Massimi Dec. ¶¶ 9, 12. These rates are supported by counsel's experience and ability to command that rate in the market for legal services in this forum (that is, in Brooklyn). *See id; and* Green Ex. 3 (Remy Green's CV); Massimi Ex. 1 (Jessica Massimi's resume).

Finally, Plaintiff seeks recovery of paralegal time, which has been heavily pre-reduced because of billing issues (vague and block-billed entries), and is requested at the hourly rate usually awarded for paralegals when no background is given in this district, as explained in Green Dec. ¶ 7. That rate is $70/hr. *Feltzin v. Union Mall LLC*, 393 F. Supp. 3d 204, 214 (E.D.N.Y. 2019) (awarding $70/hr for an unnamed paralegal). The total paralegal request is therefore $584.50.

Thus, the Court should award Plaintiff $78,180.00 in attorneys' fees and paralegal fees. *See* Green Exs. 2, 6, and 7.

### c. Plaintiffs should be granted her costs.

Plaintiff seeks recovery for routine costs. She has already recovered service costs and does not seek those costs. She should be permitted to recover for the cost of the filing fee and the court reporter at Defendants' deposition. Those expenses are $400 and $1,212.80, respectively. *See* Green Ex. 9. Thus, the Court should award Plaintiff $1612.80 in costs.

**V.**   **The Court Should Allow Plaintiff the Remedy of Corporate Veil-Piercing.**

a.   Background Facts.[8]

Defendants declined to engage in *any* fee negotiations here because:

"I do not personally own any assets, monetary and/or property and therefore could not satisfy a personal judgment. In terms of any additional discovery, there has never been a complaint for piercing the corporate veil filed, so I do not think you will get very far with that argument before this Court. Equally significant as I have stated previously, my other law firm entity is a valid PC in good standing and is operated as a law firm business and has nothing to do with the Rudler case."

As Mr. Malevitis testified during his deposition, he solely owns and operates four law firms,[9]

including Defendant MLA Law Offices as well as a firm named "Paladin Law LTD."  Green Ex.

5 at 59:25-60:4.  "Paladin Law LTD[,] along with the other [law firms,] are all owned 100

percent by John L. Malevitis."  *Id*. at 77:9-14.

Of those firms, Paladin Law is the most profitable.  Mr. Malevitis could not pin down its

income, but could not say for certain whether it was under $1,000,000.00 annually.  Green Ex. 5

at 76:20-77:8.  And MLA, for its part, pulls in "from a couple thousand a month to over 10,000 a

month."  *Id*. at 75:10-15.  All statement of cash flow were apparently "omitted" from the

documents shown to Defendants' accountant in preparing a letter regarding Defendants' net

worth in discovery.  *See* ECF No. 76-3.

Mr. Malevitis does not receive either a "salary" and is not "paid in any way" for the legal

---

[8] Plaintiff notes that the Court denied her motion seeking more discovery (or default presumptions) without prejudice in handling how to view Defendants' corporate structure and net worth on class certification issues. *See* Minute Order, dated September 21, 2020.  Thus, Plaintiff only has what she could obtain through a deposition as well as the letter from Defendants' accountant all but stating he is hiding assets (ECF No. 76-3).  If the Court believes that an inadequate showing has been made for veil piercing, Plaintiff asks that the Court permit her to take further discovery on the issue.

[9] The four firms all share a P.O. Box address, and apparently also "share" the cost of receiving mail there, paying different months. *Id*. at 60:8-24.  But there are really, only two firms:  MLA and Paladin.  The other two firms, "Spartacus Law and J. L. Malevitis and Associates[,] … are still in good stead with the secretary of state, but they don't generate any business or income whatsoever.  Zero.  That's it."  *Id.* at 76:24-13.  As Mr. Malevitis candidly explained, "Those two have no operational sense, no clients, et cetera. Other than they are in good standing … with the secretary of state. Paladin Law is operational."  *Id*.

services he provides Paladin Law. *Id.* at 79:9-14. Yet Paladin *does* pay a "substantial amount" of Mr. Malevitis's expenses – as he explained, "[a] lot of [his] expenses [he] incur[s] living are paid by [his] various entities, law firms." *Id.* at 79:21-25. The sole corporate formality observed in this process is that Mr. Malevitis is "the president" and "say[s] it's okay. Go ahead. Pay it." *Id.* at 80:6-22. No meeting minutes record any such decisions. *Id.*

Mr. Malevitis stated he does not have a source of income outside his four law firms. Green Ex. 5 at 173:7-9. "At various times over the course of a calendar year[,] Paladin Law will pay certain [of Mr. Malevitis's] expenses." Green Ex. 5 at 78:1-3. At various points, either Paladin or MLA have paid Mr. Malevitis's cable and internet bill. *Id.* at 78:4-10. And regardless of if MLA is paying for "the telephone, the internet service," Paladin uses it. *Id.* at 184:23-5. Similarly, Mr. Malevitis's personal rent of $6,000.00 a month is apparently paid by MLA Law Offices (despite his asserting the total net worth of MLA is de minimis). Green Ex. 5 at 68:12-69:12. There is no formal agreement by which MLA pays rent. *Id.* at 69:15-23.

If Mr. Malevitis wanted to "purchase clothing," for example, he "would see[,] of the law firms[,] which account [he] could go buy clothes with and do it that way." *Id.* at 173:15-19. So too with food – "a pizza" for example,[10] would paid for out of a "law firm account." *Id.* at 174:19-22. By contrast, Mr. Malevitis would "segregate[]" charges billable to clients or "client expenses" – a working meal rather than "a personal meal." *Id.* at 174:19-175:9. But purely personal expenses are paid out of the firm accounts. That is, the sole corporate formality is that Mr. Malevitis sits down and "say[s] it's okay. Go ahead. Pay it." *Id.* at 80:6-22. Similarly, for physical assets involved in the legal work of MLA or Paladin, Mr. Malevitis will draw on one or

---

[10] Curiously, Mr. Malevitis seemed to make just this distinction between personal food expenses and corporate activity when explaining how he believed he was not personally signing any collection letters, saying, "I'm not John Malevitis in my personal capacity buying a loaf of bread. I'm signing as president on behalf of MLA Law Offices LTD. If I wanted to sign it personally, I would just say John Malevitis." Green Ex. 5 at 12:11-21.

the other of the law firm's accounts, but "[e]xpenses for the law firms are shared" and the firms

treat physical assets – for example, a printer – as "community piece[s] of property." *Id.* at

173:15-177:25.

Most importantly, even "purely personal expenses" – like a "new suit" for a "wedding" –

Mr. Malevitis testified he would "just take [money] from one of the law firms and pay [for

them]." Green Ex. 5 at 178:4-12. In other words, there is no distinction between (to use Mr.

Malevitis's own example) "John Malevitis in [his] personal capacity buying a loaf of bread" and

acting in his capacity as "president" of his various firms. *Id.* at 12:11-21. The financial status of

the five is interchangeable.

That said, Mr. Malevitis deliberately uses the corporate form to avoid FDCPA

compliance. In another case about the same letters at issue, Mr. Malevitis told opposing counsel

"something to the effect of 'even if you did get a judgment, I'd just close it up', referring to

MLA." Green Ex. 8 at 2. And it worked: "Based on this, [counsel in that case] determined that

a judgment against MLA Law would not allow [thei]r client to effectively collect a judgment."

*Id.* Similarly here, throughout the case, Mr. Malevitis has repeatedly asserted that there is no

way to get to his assets – that he has adequately built shields around them so he cannot be

personally tagged with a judgment and then that he built corporate shields so even a personal

judgment was not collectable. Green Dec ¶¶ 35-38. Indeed, as described above, one reading of

the relative legal merit of Defendants' positions throughout this case is that they were taken

solely to prolong the litigation, forcing Plaintiff to potentially risk more and more in attorney

time. And, now personally on the line, he now claims he owns nothing, despite being unable to

say for sure whether one of his firms pulls in less than a million dollars annually.

    b. <u>Analysis.</u>

The Court should permit Plaintiff to execute a judgment for the fees awarded (and any

amount in the Settlement that remains unpaid) against Mr. Malevitis and MLA, as well as

Paladin law (or any other entity he wholly controls, should he move assets).

Contrary to Defendants' implicit settlement position (asserting the need for a separate

"complaint for piercing the corporate veil," Green Dec. ¶ 33), "New York does not recognize a

separate cause of action to pierce the corporate veil." *In re Cabrini Med. Ctr.*, No. 09-14398

(ALG), 2012 Bankr. LEXIS 2747, at *26-27 n.16 (Bankr. S.D.N.Y. June 15, 2012). Rather, veil

piercing is an equitable remedy, and "New York law allows the corporate veil to be pierced

*either* when there is fraud *or* when the corporation has been used as an alter ego" *ITEL*

*Containers Int'l Corp. v. Atlanttrafik Express Serv., Ltd*., 909 F.2d 698, 703 (2d Cir. 1990)

(emphasis in original). *See also Williams v. Lovell Safety Mgmt. Co., LLC*, 71 A.D.3d 671, 672

(2nd Dept. 2010) (In New York, *"*[t]he corporate veil will be pierced to achieve equity, even

absent fraud, when a corporation has been so dominated by an individual or another corporation

and its separate entity so ignored that it primarily transacts the dominator's business instead of its

own and can be called the other's alter ego") (alteration adopted)*.*

Here, Plaintiff seeks only to pierce the veil on the alter ego theory. That is, Defendant

Malevitis is functionally – and financially – indistinguishable from Defendant MLA or from

Paladin Law. In deciding whether to pierce the veil in this way, the Court may consider factors

including:

> "(1) the absence of the formalities and paraphernalia that are part and parcel of the
> corporate existence, *i.e.*, issuance of stock, election of directors, keeping of corporate
> records and the like,
>
> (2) inadequate capitalization,
>
> (3) whether funds are put in and taken out of the corporation for personal rather than
> corporate purposes,
>
> (4) overlap in ownership, officers, directors, and personnel,

(5) common office space, address and telephone numbers of corporate entities,

(6) the amount of business discretion displayed by the allegedly dominated corporation,

(7) whether the related corporations deal with the dominated corporation at arms length,

(8) whether the corporations are treated as independent profit centers,

(9) the payment or guarantee of debts of the dominated corporation by other corporations in the group, and

(10) whether the corporation in question had property that was used by other of the corporations as if it were its own."

*Wm. Passalacqua Builders v. Resnick Developers S.*, 933 F.2d 131, 139 (2d Cir. 1991) ("*Resnick*") (spacing added). But "[a]pplying these -- or any other pertinent factors -- to the infinite variety of situations that might warrant disregarding the corporate form is not an easy task because disregarding corporate separateness is a remedy that differs with the circumstances of each case." *Id* (quotation marks omitted). *See also, LiButti v. United States*, 107 F.3d 110, 119 (2d Cir. 1997) ("The factors employed under alter ego analysis are essentially designed to attack the corporate structure, such as the intermingling of corporate and personal funds, … failure to observe corporate formalities such as the maintenance of separate books and records, … [and] siphoning off of funds by the dominant shareholder ….").

Here, virtually every factor points to piercing the veil (or is, at worst, neutral). As shown above, Mr. Malevitis dominates all of his entities: there is no financial distinction between him and his firms, and their financial status is not in any sense independent from his.

Perhaps most importantly, *Resnick* factors (3) and (9) weigh very heavily in favor of piercing the veil here. If Mr. Malevitis has even "*purely* personal expenses," he "just take[s] [money] from one of the law firms and pay [for them]." Green Ex. 5 at 178:4-12 (emphasis added). That is, the corporate formalities for personal expenses amount to "the president" – John Malevitis -- "say[ing] it's okay. Go ahead. Pay it." *Id.* at 80:6-22. Courts weigh this kind of

domination and alter ego status heavily in veil piercing analysis.  *See, e.g.*, *Kittay v. Flutie N.Y. Corp. (In re Flutie N.Y. Corp.)*, 310 B.R. 31, 60 (Bankr. S.D.N.Y. 2004) ("Evidence reflects that Michael Flutie was using Flutie N.Y. and then later Flutie Media, to suit his own needs, and was using corporate funds for his own personal use. It is clear that Michael Flutie had exclusive control over the operations of Flutie N.Y., and with this control he committed wrongful acts which resulted in significant losses by Flutie N.Y.").  *See also, Pisculli v. T.S. Haulers, Inc. (In re Pisculli)*, 426 B.R. 52, 61 (E.D.N.Y. 2010) ("appellant's businesses, including A.N. Leasing, were merely alter egos of appellant himself sufficient to pierce the corporate veil" where, among other things, the dominators "assigned portions of personal bills to be paid by the Businesses without any real basis for the amount assigned" and "a portion of the truck sale proceeds were used to pay personal expenses of appellant.").

On the other factors:  *Resnick* factor (4) is easy, since "Paladin Law LTD[,] along with the other [law firms,] are all owned 100 percent by John L. Malevitis."  Green Ex. 5 at 77:9-14.  On factors (5), (6), (7), and (10), MLA and Paladin share an address, along with two other wholly owned firms and conduct all work at Mr. Malevitis's home, treating all property as "community" property (Green Ex. 5 at 173:15-177:25), property, and ultimately simply paying for whatever Mr. Malevitis decides they pay for – even when they do not bring in *any* money on on their own.  Factor (1) is unclear based on the limited financial discovery Defendants did not stonewall, but for financial matters, Mr. Malevitis made clear his corporation do not keep formal records of which firm paid for what – and did not keep meeting minutes or any other record of decision Mr. Malevitis made to use firm assets to pay for purely personal expenses.


As the Second Circuit has explained, for an alter ego theory of veil piercing, a "showing

that the corporations were undercapitalized, that [the owner of the corporations] used corporate funds or personal expenses, and that transactions between [that owner] and the corporations were not arms' length" can be enough to pierce the veil. *United States v. Coppola*, No. 95-6030, 1995 U.S. App. LEXIS 39937, at \*6, 77 A.F.T.R.2d (RIA) 1996-630 (2d Cir. Dec. 26, 1995). That showing has been made here. Thus, Plaintiff should be allowed to seek recovery from Paladin Law, LTD.

## **<u>CONCLUSION</u>**

For all the reasons discussed herein, Plaintiff requests that the Court grant her fee petition in the amount requested, along with any additional fees incurred in motion practice, and allow her to pierce the corporate veil in collecting those fees.

Dated:      November 26, 2020
            Queens, New York

                      Respectfully Submitted,

                         /s/
                      _____
                      J. REMY GREEN
                      JESSICA MASSIMI
                      Cohen&Green P.L.L.C.
                      1639 Centre Street, Suite 216
                      Ridgewood, NY 11385
                      (929) 888.9480 (telephone)
                      (929) 888.9457 (facsimile)
                      remy@femmelaw.com