**UNITED STATES DISTRICT COURT FOR THE**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Britney Rudler,<br>*individually, and on behalf of all others similarly situated,*<br>　　　　　　　　　　Plaintiffs,<br>　　v.<br>MLA Law Offices, LTD, et al.<br>　　　　　　　　　　Defendants. | Docket No. 19-cv-2170<br><br>**DECLARATION OF**<br>**J. REMY GREEN** |

STATE OF NEW YORK　　　　)
　　　　　　　　　　　　　) ss.:
COUNTY OF KINGS　　　　　)

I, Remy Green, being duly sworn, depose and say:

1. I am a partner at Cohen&Green P.L.L.C., the attorneys of record for Plaintiff Britney Rudler and the putative class and, as such, am familiar with the facts and documents relevant to this dispute.

2. I make this Declaration in support of Plaintiff's motion for attorneys' fees and to allow for veil piercing, and to place certain documents and information in my knowledge in the record.

3. Attached as **Exhibit 1** is a true copy of the So Ordered Settlement in this matter (ECF No. 83).

4. Attached as **Exhibit 2** is a true copy of my timesheet for this matter, which reflects contemporaneous time keeping through the application "Toggl," which I have printed out and removed Rule 4-related time (per the Settlement). I have also indicated minor reductions for tasks I do not believe were sufficiently well described or were otherwise duplicative.

5. Attached as **Exhibit 3** is a true copy of my current long form CV.

6. Attached as **Exhibit 4** is a transcript of pre-motion proceedings before the Court in this matter, on proposed motions to dismiss, strike affirmative defenses, and for summary judgment.

7. Attached as **Exhibit 5** is a true copy of Defendants' deposition in this matter.

8. Attached as **Exhibit 6** is a true copy of Jessica Massimi's timesheet in this matter, further described in her Declaration.

9. Attached as **Exhibit 7** is a true copy of a timesheet for our paralegal in this matter, who is no longer with our firm at this time (given that, I have omitted the paralegal's name or qualifications, and we only ask for recovery at the lowest available paralegal rate). As reflected on that timesheet, I have significantly reduced or otherwise crossed out billing for being vague or reflecting block billing, and otherwise added commentary where I was able from context to determine the tasks being billed for.

10. Attached as **Exhibit 8** is a true copy of a response to a subpoena from attorneys in another case against the same Defendants here.

11. I ask the Court to award me an hourly rate of $375.00 per hour in connection with this case.

12. I previously sought an hourly rate of $375.00 in connection[1] with the prior fee application. ECF 45-6.

13. On that application, as the Court observed that I failed to provide support for my requested rate (which was, of course, correct). ECF No. 46 at 5.

---

[1] That application was in 2019, and in 2020, I raised my rate to $425/hr.

14. Thus, in the absence of support, the Court found an hourly rate of $300.00 to be reasonable.

15. I respectfully submit that an hourly rate of $375.00 for me on this case is appropriate, and ask the Court to award this rate.

16. I note that my *actual* rate at present – that is, the rate paying clients who have agreed to pay full freight[2] pay me – is $425/hr. For my paying clients, that rate is the same in Brooklyn and the Eastern District of New York as it is in Manhattan and the Southern District of New York.

17. While I am not aware of any firms that bill different rates for litigating in the Eastern District as opposed to the short hop across the river in the Southern District, courts treat the legal markets as district – and treat the Eastern District as if it were less prestigious. While I disagree with the premise,[3] I have nonetheless reduced my requested fee to $375 to reflect that difference.

**My Background**

18. I am a 2016 graduate of the University of Chicago Law School, and a founding partner of my firm.

---

[2] As a firm that is focused on public interest concerns, most of our docket is low-bono, or is in areas – like the FDCPA – that provide private attorney general recoveries. That said, we do have full freight clients, and they pay this rate (and happily).

[3] As a matter of realism, the Eastern and Southern District Courts in Manhattan in Brooklyn are not in different legal markets (while the Central Islip and White Planes Courthouses are *both* in lower-cost legal markets). Firms providing services in Brooklyn's federal courthouse charge the same rates as those providing services in the Manhattan courthouse because, well, they are the same firms. And of course, I do not think the premise the attorneys and judges working in Brooklyn are somehow worth less than those in Manhattan is at all well-founded – and certainly not worth *half* as much. *Compare, e.g., Thomas v. City of New York*, 14-cv-7513 (ENV) (VMS), 2017 WL 6033532, at *4 (E.D.N.Y. Dec. 1, 2017) ($300 to $450 for partners and $100 to $325 for associates); *with United States ex rel. Fox Rx, Inc. v. Omnicare, Inc.*, No. 12 Civ. 275 (DLC), 2015 U.S. Dist. LEXIS 49477, 2015 WL 1726474, at *2 (S.D.N.Y. Apr. 15, 2015) (approving rate of $836/hour for partners, $631.75/hour for eighth-year associate, and $541.50/hour for fourth-year associate in FCA case).

19. Our firm's primary practice is in the civil rights arena, where I have been lead counsel in a number of high-profile[4] class actions. Those cases include:

   a. *Jones v. United States Postal Service*, 20-cv-6516 (SDNY 2020) (national voting rights class action where I acted as lead counsel representing voters across the country, and obtained a nationwide injunction regarding slowdowns in Postal Service) (case remains active);
   b. *Gallagher v. N.Y. State. Bd. of Elections,* 20-cv-5504 (SDNY 2020) (New York State voting rights class action where I acted as lead counsel representing voters across the State, and obtained a statewide injunction regarding ballots missing postmarks) (case remains active); *and*
   c. *Yang v. N.Y. State Bd. of Elections*, 20-cv-3325 (SDNY 2020) (statewide class action where counsel represented intervening plaintiffs, obtaining statewide injunction regarding cancellation of the Democratic Presidential Primary), *aff'd sub. nom. Yang v. Kosinski*, 960 F.3d 119 (2d Cir. 2020) (case fully resolved).

20. As the Court can see from my CV, I have also published several academic articles and at this stage, am routinely consulted and quoted in major publications and media outlets on important civic legal issues.

21. Throughout law school, practicing under Illinois' rule permitting senior law students to appear in court, I briefed, argued, and won class certification in a civil rights case asserting a positive constitutional right to internet access (e.g., the State was required to provide access to the internet) for people held in state facilities after a criminal finding of not guilty by reason of insanity. I also drafted the complaint, as well as briefing that lead to a grant of partial summary judgment in that matter.

22. Following law school (and during the summer while I was in law school), from 2016 through 2018, I was an associate at Fried, Frank, Harris, Shriver

---

[4] By "high-profile," I mean that these cases have been covered in national papers of record, and other outlets.

4

& Jacobson LLP. Among other things, my work there included civil rights litigation before Federal Courts of Appeals and the United States Supreme Court, high stakes disputes in Federal District Courts, as well as real estate litigation in New York State and Federal courts.

23. Since then, I founded Cohen&Green P.L.L.C., a small firm focusing on public interest and impact litigation, where I am now a partner.

24. While it is a small part of our practice, our firm has filed and resolved a number of putative class actions under the Fair Debt Collection Practices Act, U.S.C. § 1692 et. Seq. ("FDCPA"), and we have resolved at a good number of other FDCPA matters confidentially pre-suit.

25. I am a member in good standing of the bar of the states of New York and New Jersey, as well of the U.S. Courts for the Southern, Northern, and Eastern Districts of New York as well as the U.S. Court of Appeals Second, Third, and Seventh Circuit. I am also admitted to practice before the United States Supreme Court.

26. I am a member of a number of bar associations, including relevantly here, the National Association of Consumer Attorneys ("NACA"). I am an active member of that community.

**Comments on Case History**

27. As also described in the Massimi Declaration, this case has been unusually difficult to litigate. Whether it was Defendants' refusal to accept service (or literally running away from our process server) or lack of cooperation on basic issues in discovery, this case has moved from what should have been a short simple matter to an extended affair necessitating motion practice.

28. For example, it took months, the use of a third party subpoena, more than a dozen meet and confer calls and formal letters, and the appearance of a knowledgeable FDCPA attorney representing Defendants to convince them to simply disclose the number of letters identified in the class definition.

29. Even the present motion reflects difficulties absent in an ordinary case.

30. Rather than negotiate a fee, even after settling the case, Defendants refused to settle the fee.

31. Initially, when I made an offer that waived *all* paralegal time and costs, and only sought recovery for my time and Ms. Massimi's time (at $300/hr, rather than our full rates), Defendants responded only, "Your demand is based upon fees for two attorneys, which in my opinion will never pass muster for this type of case with the Court. Accordingly, the fee demand is rejected."

32. Then, (while, of course, using two attorneys is hardly overstaffing a case that lasts two years), I offered to omit Ms. Massimi's time and asked that, even if Defendants could not agree to that number, they "make a counter-offer, rather than rejecting settlement outright."

33. Defendants rejected both requests, and when pressed on why,[5] wrote:

"I do not personally own any assets, monetary and/or property and therefore could not satisfy a personal judgment. In terms of any additional discovery, there has never been a complaint for piercing the corporate veil filed, so I do not think you will get very far with that argument before this Court. Equally significant as I have stated previously, my other law firm entity is a valid PC in good standing and is operated as a law firm business and has nothing to do with the Rudler case."

---

[5] Defendants initially simply baldly asserted they could not satisfy judgments and did not believe it was appropriate to make an offer.

34. Thus, this application (both as to fees and as to veil piercing) is only necessary because, once again, Defendants are not negotiating within the norm for these cases: this is not an area where one simply "reject[s]" a fee demand. As the Court observed at a recent appearance, FDCPA cases involve attorneys' fees – there's no argument otherwise. *But see* ECF No. 53 (even after amending their answer to remove meritless affirmative defenses at the Court's instruction, Defendants asserting an affirmative defense titled "No Attorneys' Fees").

35. Additionally, throughout this case, as was apparently the case in an FDCPA case brought in Illinois about these same letters some years ago (*see* Exhibit 8), Mr. Malevitis has continually asserted in settlement discussions that he has built corporate "shields" around himself. He has explicitly said his assets cannot be reached by design. When pressed on this, he has been cagier in writing (of course), but even then, he does not assert that – if he *wanted* to – he could not satisfy a judgment. Instead, his repeated assertions are that the corporate protections he has built for his assets would protect him from any judgment.

36. As in the case described in Exhibit 8, then, he attempted to use the assertion of such corporate protections to make Plaintiff drop her claims altogether. *See, e.g.,* Ex. 8 at 4 (pagination from PDF).

37. Finally, I note that the assertion has changed over the course of the case. Initially, Mr. Malevitis threatened to seek sanctions for our including him personally in the suit (notwithstanding good authority in this Circuit that FDCPA liability is personal for an attorney who signs debt collection letters). Then, he sought to have himself dismissed. All the while, though, his assertion focused on

the fact that – as in Exhibit 8 – he could "close [MLA] up" if we ever "g[o]t a judgment." Ex. 8 at 2.

38. Once the Court strongly suggested Mr. Malevitis drop the no-personal-liability theory of the FDCPA, he then started asserting he was personally judgment proof because of corporate shielding. However, as explained in the accompanying memorandum, it is hard to see how that is true given that he wholly owns a law firm that may well have over a million dollars in annualized income.

39. Finally, attached as a combined **Exhibit 9** are true copies of an invoice for the court reporter used for Mr. Malevitis's deposition and a payment receipt for the filing fee.

40. Plaintiff respectfully requests that the Court award the undersigned an hourly rate of $375.00 per hour for a total of 133.7 hours prior to the Settlement and 10.5 hours post Settlement and relating to this fee application.

I declare, under penalty of perjury, that the statements above are true and correct.

Executed On: November 26, 2020

/s/
_____
J. Remy Green