UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
BRITNEY RUDLER, *on behalf of herself
and all others similarly situated*,[1]

                Plaintiff,           **REPORT & RECOMMENDATION**
                                                   **19 CV 2170 (EK)(LB)**

    -against-

MLA LAW OFFICES, LTC., and JOHN L.
MALEVITIS,

                Defendants.
-------------------------------------------------------------X

**BLOOM, United States Magistrate Judge:**

       Plaintiff Britney Rudler brought this action against John Malevitis and his law firm, MLA Law Offices ("MLA"), alleging that defendants violated the Fair Debt Collection Practices Act ("FDCPA") and New York General Business Law ("NYGBL"). The parties reached a settlement and signed a settlement agreement. ECF No. 83, Settlement Agreement ("Settle. Agree."). Pursuant to that agreement, plaintiff now moves for attorney's fees and costs. 15 U.S.C. § 1692k(a)(3); NYGBL § 349(h); Settle. Agree. ¶¶ 3–4 ("Plaintiff is a prevailing party by definition under the FDCPA and the [NY]GBL," and "[a]s a prevailing party, Plaintiff is entitled to her attorneys' fees and costs…"). Specifically, plaintiff seeks $79,792.00 and a Court Order that plaintiff is entitled to the equitable remedy of corporate veil-piercing to collect that sum.

       The Honorable Eric R. Komitee referred plaintiff's motion to me for a Report and Recommendation in accordance with 28 U.S.C. § 636(b). For the reasons set forth herein, it is respectfully recommended that plaintiff's motion should be granted in part and denied in part.

---

[1] Although this action was purportedly brought "individually and on behalf of all others similarly situated," it was never certified as a class action. ECF No. 51-1.

## FACTUAL BACKGROUND[2]

Plaintiff Britney Rudler incurred a debt to AcceptanceNow[3] for the lease of "[a] bunk bed and mattresses." ECF No. 51, First Amended Complaint ("FAC") at ¶ 21. This qualifies as a "debt" under the FDCPA, 15 U.S.C. §1692(a)(5), and plaintiff is a "consumer," 15 U.S.C. §1692(a)(3). Id. ¶¶ 22, 8. MLA is an Illinois-based law firm that acts as a debt collector as defined by the FDCPA, 15 U.S.C. §1692(a)(5). Id. ¶ 12. Defendant John Malevitis is an attorney and the president, registered agent, and founder of MLA. Id. ¶ 15. Defendant Malevitis is a debt collector as defined by 15 U.S.C. §1692(a)(6). Id. ¶¶ 16–17.

On or about March 29, 2019, defendants mailed plaintiff a letter attempting to collect an unspecified amount of money allegedly owed to AcceptanceNow, along with the physical return of the mattresses. Id. ¶ 22. Plaintiff alleges that defendants violated the FDCPA, 15 U.S.C. §1692g(a)(1), by failing to disclose the amount of the alleged debt owed in their initial communication with plaintiff. Id. ¶¶ 46, 48. Plaintiff further alleges that the collection letter she received from defendants violated the FDCPA because it "contained false, misleading, or materially untrue statements as to various facts and law." Id. ¶ 49.

## PROCEDURAL HISTORY

Plaintiff filed her complaint against defendants on April 12, 2019. ECF No. 1. The summons and complaint were served on defendants on July 12, 2019. ECF No. 12. When defendants failed to answer or otherwise appear in the action, plaintiff requested and the Clerk of Court noted defendants' default pursuant to Rule 55(a) of the Federal Rules of Civil Procedure.

---

[2] The facts are drawn from the allegations in plaintiff's first amended complaint, ECF No. 51-1.

[3] AcceptanceNow is also known as "Rent-A-Center." ECF No. 84-7, "Malevitis Deposition" at 6.

ECF Nos. 14–15. Plaintiff moved for attorney's fees and the cost of service, ECF No. 13, and for discovery prior to the entry of judgment, ECF No. 16. The Court held a conference on September 19, 2019 and denied these requests without prejudice.

Defendant Malevitis subsequently appeared *pro hac vice*. ECF Nos. 25–26. Defendants moved to vacate the Clerk's certificates of default. ECF No. 28. The Court granted the motion. See Nov. 20, 2019 Order. Plaintiff moved for reconsideration of my Order, ECF No. 20, which denied plaintiff's requests for attorney's fees and discovery without prejudice. ECF No. 36. The Court granted in part and denied in part plaintiff's motion, awarding plaintiff $1,114.50 for the costs of service and $1,500.00 in attorney's fees. ECF No. 46.

Plaintiff filed a First Amended Complaint ("FAC"), ECF No. 51, defendants answered the FAC, ECF No. 53, and the Court directed the parties to file a letter by May 1, 2020, certifying that they had completed discovery. Feb. 7, 2020 Order. Attorney Robert Arleo appeared on behalf of defendants, ECF No. 55, and defendants filed an amended answer to plaintiff's FAC, ECF No. 60. The parties jointly requested, and the Court granted, three extensions of the discovery deadline. ECF Nos. 67, 68, 73.

Plaintiff moved for judgment on the pleadings. ECF No. 54. The Court denied the motion with leave for plaintiff to renew after class certification was resolved. ECF No. 75. Plaintiff moved for discovery sanctions, ECF No. 76, and Mr. Arleo moved to withdraw as defendants' counsel, ECF No. 77. The Court granted Mr. Arleo's motion and directed defendant MLA, a corporation, to retain new counsel. Sept. 1, 2020 Order. The Court held a conference, denied plaintiff's motion for discovery sanctions without prejudice, and set a briefing schedule for plaintiff's motion for class certification. Sept. 21, 2020 Order. Plaintiff moved for class certification and Judge Komitee referred plaintiff's motion to me for a Report and Recommendation. ECF No. 81. On October 27,

2020, the parties filed a settlement agreement. ECF No. 83. Plaintiff now moves to pierce defendants' corporate veil and for attorney's fees. ECF No. 84. Defendant Malevitis opposes the motion to pierce the corporate veil. ECF No. 86. Judge Komitee referred the motion to me for a Report and Recommendation.

**DISCUSSION**

**A. Attorney's Fees**

When a consumer "brings a successful FDCPA lawsuit," she may recover all of her costs and reasonable attorney's fees. 15 U.S.C. §1692k. The Second Circuit has generally viewed the attorney's fees provision of the FDCPA as mandatory, awarding costs and reasonable fees as "a matter of course" to prevailing plaintiffs. See Jacobson v. Healthcare Fin. Servs., 516 F.3d 85, 95 n. 8 (2d Cir. 2008) (noting that "[t]he award of costs and fees to a successful plaintiff appears to be mandatory.").

The settlement agreement provides that plaintiff is entitled to her attorney's fees and costs as "agreed to by counsel for the parties" or "in the event counsel cannot agree, as determined by the Court upon application by [p]laintiff's counsel." Settle. Agree. ¶ 4. Further, the parties stipulated that plaintiff is entitled to recover attorney's fees "for all time reasonably involved in this case, inclusive of time all spent on class-related discovery and class certification, as well as all other motions involved in litigating this case." Id. ¶ 5(a).

Though fee shifting is mandatory under the statute, the fee must be reasonable. A presumptively reasonable fee is determined by calculating the lodestar or "the product of a reasonable hourly rate and the reasonable number of hours required by the case." Millea v. Metro-North R. Co., 658 F.3d 154, 166 (2d Cir. 2011) (citing Arbor Hill Concerned Citizens

Neighborhood Assoc. v. Cty. Of Albany, 522 F.3d 182, 183 (2d Cir. 2008)). "The presumptively reasonable fee boils down to what a reasonable, paying client would be willing to pay." Simmons v. N.Y. City Transit Auth., 575 F.3d 170, 174 (2d Cir. 2009) (internal quotations and citation omitted).[4] To assess the reasonableness of the proposed attorney's fee, a court will review contemporaneous billing records documenting, for each attorney, the date, the hours expended, and the nature of the work done. N.Y. State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1148 (2d Cir. 1983). It is well established that the burden is on the party moving for attorney's fees to justify the hourly rate sought and to show evidence of the hours spent. Blum v. Stenson, 465 U.S. 886, 895–96, n. 11 (1984). Plaintiff has provided such information here.

1. **Rates**

"In determining the rate a paying client would be willing to pay, the district court should consider, among others, the Johnson factors . . . [and should] bear in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." Arbor Hill, 522 F.3d at 190.[5] Additionally, under the "forum rule," courts ordinarily award in-district rates. Favors v. Cuomo, 39 F. Supp. 3d 276, 300 (E.D.N.Y. 2014) (citing Simmons, 575 F.3d at 174).

---

[4] The question of whether or not a reasonable plaintiff would have actually paid $79,792.00 to recover $1,552.00 in statutory damages is not relevant under a fee-shifting statute such as the FDCPA. Millea v. Metro-North R.R. Co., 658 F.3d 154, 166 (2d Cir. 2011) ("[e]specially for claims where the financial recovery is likely to be small, calculating attorneys' fees as a proportion of damages runs directly contrary to the purpose of fee-shifting statutes"). However, as the Supreme Court has instructed, counsel should make a "good-faith effort to exclude from a fee request hours that are excessive […] or otherwise unnecessary." Hensley v. Eckerhart, 461 U.S. 424, 434 (1983). "In the private sector, 'billing judgment' is an important component in fee setting. It is no less important [in the fee-shifting context]." Id. (quoting Copeland v. Marshall, 641 F.2d 880, 891 (D.C. Cir. 1980) (en banc)).

[5] The Court in Arbor Hill referenced the twelve Johnson factors: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the

Courts in this district have determined reasonable hourly rates for partners with over ten years of experience in FDCPA cases as approximately $300–$350. Razilova v. Halstead Fin. Servs. LLC, No. 18-CV-1668 (RRM)(PK), 2019 WL 1370695, at *6 (E.D.N.Y. Mar. 1, 2019) (reducing the hourly rate to $350 for two attorneys, both founding partners with over seventeen years of practice experience in multiple state, district, and circuit courts), report and recommendation adopted, 2019 WL 1364399 (E.D.N.Y. Mar. 26, 2019); Douyon v. N.Y. Med. Health Care, P.C., 49 F. Supp. 3d 328, 344 (E.D.N.Y. 2014) (reducing hourly rate to $350 per hour for an attorney with more than thirty years of experience, including time as law professor); LG Funding, LLC v. Florida Tilt, Inc., No. 15-CV-631 (PKC)(VMS), 2015 WL 5038195, at *3 (E.D.N.Y. Aug. 26, 2015) ("In this district, more experienced attorneys, typically partners with upwards of ten years' experience, are approved for rates of $300 per hour and above."); Chavez v. MCS Claim Servs., No. 15-CV-3160 (JMA)(AKT), 2016 WL 1171586, at *4 (E.D.N.Y. Mar. 23, 2016) (reducing requested hourly rate of $575 to $350 per hour for two founding partners each with over 15 years' experience).

Plaintiff seeks rates of $375 per hour for attorney Remy Green and $400 per hour for attorney Jessica Massimi. These rates are high. Though Mx. Green is a founding partner of the firm, Mx. Green graduated from law school in 2016, just five years ago.[6] See ECF No. 84-2, Declaration of J. Remy Green ("Green Decl."). See also Rudler v. Houslanger & Assocs., PLLC, No. 18-CV-7068 (SJ)(AYS), 2020 WL 473619 15923, at *5 (E.D.N.Y. Jan. 29, 2020) ("despite wearing the mantle of "partner," Green does not have the commensurate experience warranting

---

client; and (12) awards in similar cases. Johnson v. Ga. Highway Express, Inc., 488 F.2d 714, 717–19 (5th Cir. 1974).

[6] Neither Mx. Green's resume, ECF No. 84-5, nor their declaration, ECF No. 84-2, identifies when Mx. Green was admitted to practice law.

the award of an hourly fee that courts in this District deem appropriate for partners, i.e., attorneys with significantly more relevant experience than that of Green."). Ms. Massimi was admitted to practice law in June of 2011. See ECF No. 84-12, Declaration of Jessica Massimi ("Massimi Decl."). Although Ms. Massimi has nine years of experience practicing law, she does not list any experience in consumer law. Id. ("I have almost exclusively worked as a civil rights attorney, litigating […] police misconduct and employment discrimination [cases]"). Neither plaintiff's Memorandum in support of the instant motion, ECF No. 84-1 ("Mem."), nor her attorneys' declarations cite in-district cases where Mx. Green or Ms. Massimi have been awarded the hourly rates plaintiff requests.[7] Accordingly, I find a reduced hourly rate of $300 to be reasonable for both attorneys Green and Massimi.

Plaintiff also seeks $70 per hour for an unnamed paralegal. Although the paralegal should have been named and his/her experience set forth, this rate is reasonable. See Feltzin v. Union Mall LLC, 393 F. Supp. 3d 204, 214 (E.D.N.Y. 2019) (reducing the hourly rate for an unnamed paralegal to $70, the lowest in the applicable range).

**2. Hours**

The party seeking attorney's fees also bears the burden of establishing that the number of hours for which compensation is sought is reasonable. Custodio v. Am. Chain Link, No. 06 Civ 7148, 2014 WL 116147, at *9 (S.D.N.Y. Jan. 13, 2014) (citing Cruz v. Local Union No. 3 of Int'l Bhd. of Elec. Workers, 34 F.3d 1148, 1160 (2d Cir. 1994)). "Applications for fee awards should generally be documented by contemporaneously created time records that specify, for each attorney, the date, the hours expended, and the nature of the work done." Kirsch v. Fleet St., Ltd.,

---

[7] In support of plaintiff's request for a $400 rate for Ms. Massimi, the Massimi Decl. cites one case from the Southern District where she was awarded a $300 hourly rate, Alicea v. City of New York, 272 F. Supp. 3d 603, 611 (S.D.N.Y. Aug. 8, 2017).

148 F.3d 149, 173 (2d Cir. 1998). Hours that are "excessive, redundant, or otherwise unnecessary," are to be excluded. Hensley, 461 U.S. at 434. However, in reviewing a fee application, "trial courts need not, and indeed should not, become green-eyeshade accountants," and "may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." Fox v. Vice, 563 U.S. 826, 838 (2011).

Plaintiff requests 144.2 hours (133.7 hours of "pre-fee application" time and 10.5 hours of "fee application time") for Mx. Green and 58 hours for Ms. Massimi. The Court has reviewed the contemporaneous time records. ECF Nos. 84-4 ("Green Timesheet"), 84-8 ("Massimi Timesheet"). The 10.5 hours requested for the fee application are reasonable. See Handschu v. Special Servs. Div., 727 F.Supp.2d 239, 255 (S.D.N.Y. 2010) (time spent on a fee application is compensable); M.K. ex rel. C.K. v. Arlington Cent. Sch. Dist., No. 16-CV-05751, 2019 WL 92004 (S.D.N.Y. Jan. 3, 2019) ("Eleven and one quarter hours is a reasonable amount of time for work on a standard attorney's fee application.").

However, some of the requested pre-fee application hours are excessive or are not compensable at the requested rate.[8] Further, some of the pre-fee application work performed in this case involved basic tasks that did not require two senior-level attorneys, and could have been accomplished at a reduced hourly rate. For these reasons, I recommend a 15 percent reduction in the total number of pre-fee application hours spent by Mx. Green and Ms. Massimi. See New York

---

[8] For example, Green billed .5 hours on July 9, 2019 for a less than one-page extension request, ECF No. 9; Massimi billed a total of 20.2 hours on December 3–5, 2019 for a pre-motion conference letter, ECF No. 37. On January 15, 2020, Massimi billed her full rate for travel to and from the Court (2.2 hours). That same date, Green block-billed travel to the Court, time spent during the pre-motion conference, and "waiting" because "the Court's schedule was overbooked" (3.2 hours). See Massimi Timesheet, Green Timesheet. Travel time is appropriately reimbursed at one-half of the hourly rate of legal work, "in accordance with established court custom." Garcia v. City of New York, No. 11-CV-2284 (JBW)(JO), 2013 WL 5574507, (Oct. 9, 2013 E.D.N.Y.) (quoting Barfield v. N.Y. City Health & Hosps. Corp., 537 F.3d 132, 139, 151 (2d Cir. 2008)).

Ass'n for Retarded Children, 711 F.2d at 1146 (the court has discretion simply to deduct a reasonable percentage of the number of hours claimed, "as a practical means of trimming fat from a fee application.").

Plaintiff has also billed 8.35 hours for the unnamed paralegal's time. This total has been reduced by plaintiff's counsel for "vague and block-billed" entries. The Court has reviewed plaintiff's paralegal billing records, ECF No. 84-9 ("Paralegal Timesheet"), and finds the requested 8.35 hours to be reasonable. I therefore recommend that plaintiff be awarded $52,822.00 as her total attorney's fee.[9]

**B. Costs**

"The fee applicant bears the burden of adequately documenting and itemizing the costs requested." See Monge v. Glen Cove Mansion Hosp., LLC, No. 18-CV-7229 (SJF)(SIL), 2020 WL 1666460, at *9 (quoting Volpe v. Nassau County, No. 12-CV-2416 (JFB)(AKT), 2016 WL 6238525, at *10 (E.D.N.Y. Oct. 24, 2016)). Plaintiff seeks costs of $1,612.80 including the $400.00 filing fee and $1,212.80 for the court reporter at defendant's deposition. Plaintiff's filing fee is verified by the docket, ECF No. 1. See Feltzin v. Union Mall LLC, 393 F. Supp. 3d 204, 219 (E.D.N.Y. 2019). Further, plaintiff submits with her motion for costs a receipt from the court reporter hired for defendant's deposition. Accordingly, I recommend plaintiff be awarded her requested costs of $1,612.80.

**C. Plaintiff's Request to Pierce the Corporate Veil**

Since "a corporation is an entity that is created by law and endowed with a separate and distinct existence," there is a presumption of separateness which is entitled to substantial weight. American Protein Corp. v. AB Volvo, 844 F.2d 56, 60 (2d Cir. 1988); see also Murray v. Miner,

---

[9] Mx. Green's "fee application" fee ($300 x 10.5 fee application hours = $3,150.00), plus Mx. Green's "pre-fee application fee" ($300 x 113.65 hours (133.7 reduced by 15%) = $34,093.50) plus Massimi's fee ($300 x 49.98 (58.8 reduced by 15%) = $14,994.00) plus the unnamed paralegal's fee ($70 x 8.35 hours = $584.50) equals a total of $52,822.00.

74 F.3d 402, 404 (2d Cir. 1996) (veil-piercing should be permitted only under "extraordinary circumstances"). Courts are reluctant to disregard the corporate form but will do so by "piecing the corporate veil" in order to prevent fraud. William Wrigley Jr. Co. v. Waters, 890 F.2d 594, 600 (2d Cir. 1989) (citations omitted).

Typically, piercing the corporate veil is used to hold an individual liable for corporate actions; however, New York also recognizes "reverse piercing" which seeks to hold a corporation accountable for the actions of an individual or another corporation. See American Fuel Corp. v. Utah Energy Development Co., Inc., 122 F.3d 130, 134 (2d Cir. 1997). "Although reverse veil piercing is rare, it may be appropriate in cases where the alter ego is being used as a "screen" for the dominating entity." Miramax Film Corp. v. Abraham, No. 01 Civ 5202 (GBD), 2003 WL 22832384, at *18 (S.D.N.Y. Nov. 24, 2003) (quoting Kingston Dry Dock Co. v. Lake Champlain Transp. Co., 31 F.2d 265, 267 (2d Cir. 1929). Here, plaintiff seeks to pierce the corporate veil of Paladin Law, LTD ("Paladin"), a non-party to this action, or "any other entity [that Mr. Malevitis] wholly controls, should he move assets," to collect any amounts in the Settlement or fee judgment that go unpaid. See Mem. at 12–13.

On an alter ego claim, the corporate veil will be pierced to impose liability where a plaintiff demonstrates that the alleged dominating party exercised complete domination over the corporation with respect to the subject transaction *and* that such domination was used to commit a fraud or other wrong which injured plaintiff. American Fuel Corp., 122 F.3d at 134 (emphasis added). Plaintiff argues that she can prevail by demonstrating that defendant Malevitis dominates Paladin since a corporate veil may be pierced "*either* when there is fraud *or* when the corporation has been used as an alter ego." Mem. at 13. Plaintiff cites, Itel Containers Int'l Corp. v. Atlanttrafik Exp. Serv. Ltd., a case decided in 1990 which does not reflect the current state of the law. 909 F.2d

698, 703 (2d Cir. 1990). "[Complete] domination, standing alone, is not a sufficient basis to pierce the corporate veil." Miramax Film Corp., 2003 WL 22832384, at *19; see also, Care Envtl. Corp. v. M2 Techs., Inc., No. 05-CV-1600 (CPS), 2006 WL 148913, at *39 (E.D.N.Y. Jan. 18, 2006) ("[a]ll of the more recent cases hold that both elements must be shown in order to pierce the corporate veil"); EED Holdings v. Palmer Johnson Acquisition Corp., 228 F.R.D. 508, 512 (S.D.N.Y. 2005) ("both of these elements must be established in order to justify application of the veil-piercing doctrine"); JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. & Trade Servs., 295 F. Supp. 2d 366, 379 (S.D.N.Y. 2003) (stating that both elements of a veil-piercing claim must be alleged); Zinaman v. USTS New York, Inc., 798 F. Supp. 128, 131 (S.D.N.Y. 1992) (same).

Here, plaintiff merely argues that defendant Malevitis "dominates all of his entities." Mem. at 14. However, to pierce the corporate veil, control over the corporation must be used to commit a wrong that "causes plaintiff's loss." Wm. Passalacqua Builders v. Resnick Developers S., 933 F.2d 131, 138 (2d Cir. 1991); see also Electronic Switching Indus., Inc. v. Faradyne Elec. Corp., 833 F.2d 418, 424 (2d Cir. 1987). Plaintiff fails to demonstrate a wrong that is attributable to Paladin. Plaintiff's argument that defendants will evade the judgment by shifting assets is purely speculative. Further, as defendant Malevitis points out in his opposition to the motion, "[Paladin] [...] has nothing to do with the Rudler case." ECF No. 84-1 at p. 15. Even if Paladin is Mr. Malevitis' most profitable enterprise, that is insufficient to pierce the corporate veil. Accordingly, I recommend that plaintiff's motion to pierce the corporate veil should be denied.[10]

---

[10] Plaintiff's request for further discovery regarding Paladin is denied. Mem. at 15 n.9. It is time to put this "simple" case to bed. See Mem. at 9. Plaintiff's remedies are against MLA and Malevitis.

## CONCLUSION

Accordingly, it is respectfully recommended that plaintiff's motion should be granted in part and denied in part. Plaintiff should be awarded $52,822.00 in attorney's fees and $1,612.80 in costs. Plaintiff's motion to piece the corporate veil is denied. Plaintiff is hereby ordered to serve a copy of this Report upon defendant forthwith.

## FILING OF OBJECTIONS TO REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen days from service of this Report to file written objections. See Fed. R. Civ. P. 6. Such objections shall be filed with the Clerk of the Court. Any request for an extension of time to file objections must be made within the fourteen-day period. Failure to file a timely objection to this Report generally waives any further judicial review. Marcella v. Capital Dist. Physicians' Health Plan, Inc., 293 F.3d 42 (2d Cir. 2002); Small v. Sec'y of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989); see Thomas v. Arn, 474 U.S. 140 (1985).

SO ORDERED.

/S/  
LOIS BLOOM  
United States Magistrate Judge

Dated: July 1, 2021
      Brooklyn, New York