

October 21, 2021

Honorable Eric R. Komitee, U.S.D.J.
United States District Court for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

By Electronic Filing.

Re: **Rudler v. MLA Law Offices, LTD et al.**, No. 1:19-cv-02170-ERK-LB

Dear Judge Komitee:

My firm represents the Plaintiff in the matter above. I write to move that the Court hold Defendants in contempt for their refusal to obey the Court's Order to pay fees in this case. Defendants have, in writing, made clear that they do not now intend — and have never intended[1] — to comply with the Court's Order and Judgment. ECF Nos. 92-93. Under clear Second Circuit precedent, the remedy for that refusal and failure is contempt. I also ask that, considering the history in this case, the Court hear oral argument on this motion — or perhaps call a conference to discuss the motion (particularly since the delay in resolving this may allow Defendants to hide assets).

By way of housekeeping, this motion might better be styled (given the relevant burdens) as a request that the Court Order Defendants to show cause for their non-compliance. So, to the extent necessary, Plaintiff asks in the alternative for the Court to issue such an Order. But whichever path the Court picks, the result here should be clear: Defendants are in contempt, with no excuse. The

---

[1] The Court may also construe this, in part, as a motion for sanctions, given this posture. In Defendants' most recent correspondence, they made clear they had no intention to pay attorneys' fees as ordered by the Court — and had never had that intent. Given that, Defendants' objections (ECF No. 90) to Magistrate Judge Bloom's Report and Recommendation (ECF No. 88) served no purpose: they solely objected to the *amount* of Judgment, which Defendants had no intention of paying in any event (the same may even be said for their refusal to negotiate fees at all, *see* ECF No. 84 at 3-4 (as paginated) (explaining how Defendants refused to even *make* a counteroffer on fees, which would have saved the Court time litigating the amount of fees when the real issue was collectability)). In that event, the objections to the R&R served no purpose but to cause unnecessary delay. And that would be sanctionable under Rule 11(b)(1). *Cf. also*, *Tyree Bros. Environmental Services, Inc. v. Ferguson Propeller, Inc.*, 247 A.D.2d 376, 669 N.Y.S.2d 221, 222 (2d Dep't 1998) (pursuing a "colorable claim for *primarily* improper purposes constitutes frivolous conduct" and requires sanctions) (emphasis added).

Defendants have now had a year to potentially make it more difficult for Plaintiff to collect what is due to her — that is, the delay has worked. But to get it, Defendant Malevitis (admitted here *pro hac vice*) has needed to take positions that no reasonable attorney would take. *See also*, 28 U.S.C. § 1927 ("Any attorney … who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.")



Court should enter progressive sanctions orders sufficient to coerce payment — starting with a simple declaration of contempt.

### Discussion

Once a District Court orders payment, there are a limited number of options. A party can obey or a party can seek relief from the Order. It's not an option to just ignore the Court's Orders.

Once a party is not in compliance, it is only "a party's *complete* inability, due to poverty or insolvency, to comply with an order to pay court-imposed monetary sanctions" that can serve as "a defense to a charge of civil contempt." *Huber v Mar. Midland Bank*, 51 F3d 5, 10 (2d Cir 1995) (emphasis added). The precise burden the Defendants face is this: they must "establish [their] inability [to pay the Judgment] clearly, plainly, and unmistakably." And it is not just that it would be *burdensome* to comply with the Court's order. Rather, the burden to show "*plainly and unmistakably* that compliance is *impossible* rests with the contemnor." *Id.* (quoting *In re Marc Rich & Co.*, 736 F.2d 864, 866 (2d Cir. 1984) (emphasis added by the Court in *Huber*).

To summarize: "in order to hold the alleged contemnor in contempt, the court need only (1) have entered a clear and unambiguous order, (2) find it established by clear and convincing evidence that that order was not complied with, and (3) find that the alleged contemnor has not clearly established his inability to comply with the terms of the order." *Huber*, 51 F3d at 10. Or, put differently, contempt is appropriate where an order to pay is unambiguous, unless the "*in*ability to pay [is] clearly established by the alleged contemnor." *Huber*, 51 F.3d at 10 (emphasis in original). *See also, Ramgoolie v. Ramgoolie*, No. 16-CV-3345 (VEC)(SN), 2020 U.S. Dist. LEXIS 33145, at *7 (S.D.N.Y. Feb. 25, 2020) (contempt orders issue where provided "documentation [in opposition] does not unequivocally establish" a "complete inability, due to poverty or insolvency, to comply with an order to pay court-imposed monetary sanctions.").

### I. The Court's Order is clear and unambiguous.

The first factor should not be in dispute. The Court was clear: "Defendants shall pay $48,606.38 in attorneys' fees and $1,612.00 in costs." ECF 92 at 7. And the Judgment was just as clear, using identical language. ECF 93. There is only one arguable ambiguity: *when* Defendants are to pay. But since Defendants have explicitly stated they do not intend to pay, any arguable ambiguity is not relevant. *Cf. Yimby, Inc. v. Fedak*, 2017 U.S. Dist. LEXIS 96700, at *9 (S.D.N.Y. June 22, 2017) ("The orders are clear and unambiguous. And there is no question that Yimby has neither paid the full $30,000, nor turned over the original Employment Agreement.").

### II. Defendants have not complied with the Order.

Similarly to factor one, there should be no dispute Defendants have not complied with the Order. The order said, "Defendants shall pay." ECF 92 at 7. Defendants have not paid. And they have stated they will not pay. No more evidence is needed to establish non-compliance.

 Page 2 of 5

Cohen&Green P.L.L.C. · 1639 Centre Street, Suite 216 · Ridgewood, New York · 11385 · t: (929) 888.9480 · f: (929) 888.9457 · FemmeLaw.com



### III. Defendants have not established compliance with the Court's order is "impossible" and will not be able to do so.

The final factor is the crux here: obviously Defendants have not yet attempted their showing, but they will not be able to meet it. Defendants previously fought tooth and nail to preclude net worth discovery — such that there even needed to be multiple discovery extensions, motion, practice, and a caution from the Court that Defendants' financial disclosures that explicitly noted that they "omit substantially all of the disclosures and the statement of cash flows required by generally accepted accounting principles" would be interpreted as waiver. *See,* discussion in ECF No. 81-1 at 5; 5 n. 2 (as paginated). But they will, presumably, in response to this motion.

The bar is very high (with good reason) for an inability to pay defense on a sanctions motion. A summary assertion of inability to pay (which is, despite being offered all the authority discussed in this letter along with multiple requests for more, all Defendants have been willing to share) is not enough. Judge Crotty's decision in *Yimby* is a useful guide to just how high the bar is. There, the (then-alleged) contemptor offered what might on its face appear to be extensive documentation:

> "(1) [a business's CEO's] affidavit, (2) a copy of its business checking account statement as of January 31, 2017, and (3) a letter from Tina Salandra, a CPA whose 'firm has been engaged to prepare 'S' corporation the tax returns (*sic*) for Yimby, Inc. for years 2015 and 2016.'

*Yimby* at *12 (alterations adopted; *sic* noted in original). Further, the Court noted that the CEO "claim[ed] that 'as of January 31, 2017, Yimby had a cumulative balance of $159.55 between all of its bank accounts and currently has a negative balance of $3,224.73 in addition to significant expense accruals,'" that "[t]he January 31, 2017 account statement shows an ending balance on January 31, 2017 of $154.55," and that another witness testified that "Yimby had 'significant operating losses' in 2014, 2015, and 2016, and 'had less than $1,000 in cash available.'" *Id.*

That was not enough. The Court offered several reasons — critically among them that "Yimby offers no evidence regarding the value of any assets it might own," which could be "'used to pay down the … order'" *Yimby* at *13 (*quoting SEC v. Zubkis*, 2003 U.S. Dist. LEXIS 16152, 2003 WL 22118978, at *4 (S.D.N.Y. Sept. 11, 2003)). The Court even noted: "Yimby also does not claim to be unable to obtain funds from outside sources [and] [n]othing is said about obtaining a loan or selling its stock." *Id.*

To evade contempt, then, Defendants must produce "more comprehensive evidence such as tax returns or documents relating to a petition for bankruptcy." *Ramgoolie*, 2020 U.S. Dist. LEXIS 33145, at *7 (imposing sanctions and rejecting an argument that a large collection of documents

COHEN&GREEN　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　Page 3 of 5

Cohen&Green P.L.L.C. · 1639 Centre Street, Suite 216 · Ridgewood, New York · 11385 · t: (929) 888.9480 · f: (929) 888.9457 · FemmeLaw.com



showed impossibility).[2] Defendants will not be able to do so. Defendants paid for counsel in this case. *See generally,* ECF No. 80 (objecting to the withdrawal of prior counsel, noting "Mr. Alreo … was paid a legal fee" and complaining of Mr. Arleo's attempt to withdraw from the case); *compare Yimby* at *13-14 (discussing legal fees). Defendants flew to New York to appear in person on a pre-motion conference on a motion to dismiss that had little basis in law. And faced with the *need* to turn over their tax returns on a necessary element of class certification, Defendants provided a response so obfuscatory, it lead to the withdrawal of their then-attorney. *See generally,* ECF No. 79 (discussing how Mr. Malevitis threatened to sue his then-attorney for saying it was Mr. Malevitis's responsibility to obtain net worth documentation — which he failed to do). Given that history, it may even be appropriate to find Defendants have *waived* any right to contest that they have net worth sufficient to satisfy the Judgment (as the Court suggested it would find on any class certification motion).

But not matter what, unless Defendants can provide "comprehensive evidence" of their current financial holdings, incomes, etc. — and that evidence shows it would be *impossible* to pay the amount the Court ordered — they should be held in contempt.

**IV. Remedies.**

Contempt is a power courts (rightly) use cautiously. This case should be no different. This contempt motion only seeks an order holding Defendants in contempt — just as was issued in *Yimby*.

---

[2] Note that, like the contemptor in *Yimby*, the documentation the contemptor provided (and the Court rejected) in *Ramgoolie* was *extensive*:

> "(1) A Letter from New York State Child Support Processing Center, showing Defendant's monthly obligation and arrears as of December 31, 2019; (2) an undated page from Defendant's matrimonial Stipulation of Settlement, showing Defendant's support arrears; (3) an email purportedly showing Defendant's support arrears as of May 4, 2019; (4) an invoice from Defendant's children's attorney, purportedly showing Defendant's overdue obligation to pay fees; (5) a 'Turn-Off of Service Notice' dated January 8, 2020, for services to a particular address in Manhattan, NY ('Property #1'), from an electric company; (6) Defendant's 'only bank account' statement, showing a negative balance as of December 6, 2019; (7) W-2 paystubs for 2017-19 and a paystub dated December 28, 2019, for income earned from Ship Wrecked Bar and Grill, Inc., d/b/a 'Wicked Willy's'; (8) a stipulation entered by Defendant with the New York State Department of Labor (the 'Department'), showing past and future amounts Defendant owes to the Department; (9) Wicked Willy's December 2019 Capital One checking account statement; (10) Information about a mortgage in Defendant's name, reflecting an amount due on November 1, 2019, for a mortgage on Property #1; (11) Information about a mortgage in Defendant's name, reflecting an amount due on November 1, 2019, for a mortgage on a particular property in South Ozone Park, NY ('Property #2'); (12) an invoice for rent and charges due on or around December 15, 2016, for occupancy of a residence in Manhattan, NY ('Property #3'); a common charge invoice due December 1, 2019, for Property #1; (13) a New York State Department of Finance property tax lien for a property in Queens, NY (Property #4) due October 1, 2019; and (14) evidence of purported loan arrangements and payments to Defendant from two individuals."

Page 4 of 5

Cohen&Green P.L.L.C. · 1639 Centre Street, Suite 216 · Ridgewood, New York · 11385 · t : (929) 888.9480 · f : (929) 888.9457 · FemmeLaw.com



However, if that "Order does not bring [Mr. Malevitis] and [MLA Law offices] into immediate compliance," Plaintiff asks that the Court permit her then "move for move for further relief, up to and including a request for [Mr. Malevitis's] civil incarceration."  *Yimby* at *19.

While it may be appropriate to seek her attorneys' fees as part of that contempt order (fees were awarded in *Yimby*), Plaintiff waives any fee entitlement on this issue to date, but reserves the right to seek such fees if proceedings over contempt multiply.  *See also,* 28 U.S.C. § 1927.

## Conclusion

As ever, I thank the Court for its time and consideration.  I want to assure the Court I have made every effort to resolve this without involving the Court — and I regret that this motion has become necessary.

Respectfully submitted,

/s/
_____
J. Remy Green
   *Honorific/Pronouns: Mx., they/their/them*
**COHEN&GREEN P.L.L.C.**
*Attorneys for Plaintiff*
1639 Centre St., Suite 216
Ridgewood, New York 11385

cc:
All relevant parties by ECF.

Cohen&Green P.L.L.C.  ·  1639 Centre Street, Suite 216 · Ridgewood, New York · 11385  ·  t : (929) 888.9480  ·  f : (929) 888.9457  ·  FemmeLaw.com