

August 7, 2022

Hon. Lois Bloom, U.S.M.J.
United States District Court for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

By Electronic Filing.

       Re:    Case No. 1:19-cv-02170-EK-LB, Rudler v. MLA Law Offices, LTD et al.

Dear Judge Bloom:

      As the Court may recall, my firm represents the Plaintiff in the case above. I write because,[1] while I believed the parties had an accord with regard to Defendants' application at Dkt. No. 112,[2] it has become clear that the parties did not have a meeting of the minds.[3] I also apologize that this kind of squabble between counsel has bled over to the docket. While I have done what I can to keep it off the docket, unfortunately, the current situation is such that it will either come up now or later — and communications from Mr. Malevitis have deteriorated to just personal insults and threats.

      As the Court knows, this relatively simple case already has a tortured history. The case theoretically settled in November 2020. See Dkt. Nos. 82 and 83. Part of that settlement was that the Court would retain jurisdiction for a variety of purposes, but specifically relevant here, to determine the amount of attorneys' fees due under both the FDCPA and New York consumer protection law. Dkt. No. 83 ¶¶ 3-6. The parties could not agree on an amount, so Plaintiff made an application (Dkt. No. 84), and the Court ultimately ordered that Defendants owed about $50,000.00 in fees. See Dkt. Nos. 88 and 92. The Court reduced that sum to judgment (Dkt. No. 93), and Plaintiff began efforts to collect. After motion practice, when Defendants failed to include necessary information in response to a first information subpoena — and failed to respond to a second information subpoena entirely — the Court issued an order directing fulsome responses, and warning that contempt would follow if Defendants did not serve those fulsome responses. Dkt. No. 100 at 1-2.

      Following that, the Court extend deadlines several times and "STRONGLY urge[d] the parties to settle this case." June 6, 2022 Minute Order. Thus, the parties put together a *second* settlement and

---

[1] Given that, if the pattern holds, Defendants will likely file a letter filled with mudslinging and sanctions threats (*see, e.g.,* Dkt. No. 99), I would like to — on a personal note — ask Defendants to take care not to misgender me (again, *see* Dkt. No. 106). *See also,* Dkt. No. 92 at 5 n.1 (the Court noting the correct way to refer to me).

[2] Defendants' application was filed as a "Notice" (*but see,* Individual Practices of Magistrate Judge Lois Bloom ¶ 3), so we file this as a "Letter" rather than an opposition, since the e-filing system does not permit an opposition to a "Notice."

[3] Indeed, that is putting it generously. Defendants' position is, better stated, invented from whole cloth. But, as set out below, rather than dive into that (and deal with credibility issues among counsel and the hearings that would likely accompany that), the Court should just keep post-judgment discovery moving.

Cohen&Green P.L.L.C. · 1639 Centre Street, Suite 216 · Ridgewood, New York · 11385 · t: (929) 888.9480 · f: (929) 888.9457 · FemmeLaw.com



proposed the Court so-order it. *See* Dkt. Nos. 108 and 109. The Court did not immediately so-order the settlement. Thus, the first deadlines in the second settlement passed without Defendants doing the things the settlement required, and the Court ultimately (at the parties' request) scheduled a conference to discuss. *See* Dkt. No. 110. At that conference, Judge Komitee expressed that he did not see a reason to So-Order a *second* settlement: the first settlement was not substantively different, and he did not want to be involved in the day-to-day of enforcing a settlement to the extent the first settlement had not already bound the Court to do so. He also expressed reservations that the second settlement lacked any consideration. Thus, Judge Komitee ultimately rejected and voided that second settlement (Dkt. No. 111), and asked Your Honor to reset post-judgment discovery deadlines. The Court did so, making Defendants' long-promised responses due on August 4. July 21, 2022 Minute Order.

Defendants reached out on July 31 to discuss a third "settlement." Plaintiffs expressed[4] that there was only one "settlement" option: "If we're talking about a lump sum, one time payment, we can finish this. A payment plan does not work, given the history, without an enforcement mechanism — and as the Court said, you should be making payments anyway." Jul. 31, 2022 (10:25 a.m.) Email from Remy Green.[5] After several exchanges in which Defendants made clear that they had $20,000.00 on hand and were attempting to extract a release rather than making a payment,[6] Plaintiff spelled it out again:

"So, with that, let me once again make clear the options we are offering you:

1. You pay $20,000.00 immediately, and continue to make the payments you can, and the Court resolves our objections on the contempt motion as well as any deficiencies in what we expect to be a fulsome document and interrogatory production early this week; or

2. You make a payment for $35,000.00 in fees; $1,612.00 in costs; and $791.10 in interest this week, and we release the balance."

Jul. 31, 2022 (12:49 p.m.) Email from Remy Green. After a few more messages, Defendants asked to speak by phone on August 1.

Plaintiff's position did not change in that discussion. Rather, in that August 1 phone conversation — and as is expressed in the letter Defendants filed — Defendants committed to making a $20,000.00 payment and continuing to pay down the balance of the judgment (and any further awards) until it was satisfied in full. With Plaintiff's consent, Defendants would not need to engage in the significant work required to respond to post-judgment discovery. To that end, Defendants

---

[4] Given the Court's preference, I will not attach the many written communications discussed in this letter, but suffice to say, there is no ambiguity

[5] Plaintiff reiterated this position several other times, saying in another email, for example: "If you'd like a situation[ally] appropriate release or to otherwise put this to bed, you can have one at the total stated in the settlement the Court rejected."

[6] At the conference, Judge Komitee was very clear that he expected Defendants to pay any amount of money they had on hand immediately.



Cohen&Green P.L.L.C. · 1639 Centre Street, Suite 216 · Ridgewood, New York · 11385 · t: (929) 888.9480 · f: (929) 888.9457 · FemmeLaw.com



delivered a check on August 4 for $20,000.00, and the check cleared. In the wake of that discussion, but before Defendants filed the letter, Plaintiff expressed "we should also meet and confer to see if there is any agreement we can reach on post-judgment fees and adjusting the appropriate rate" (noting "I will provide authority for our position before we talk") and Defendants responded "Ok let's discuss." Aug. 4, 2022 Emails. The parties also traded drafts of the motion at Dkt. No. 112, and relevantly, Plaintiff made these changes:

> _____On August 4, 2022 counsel herein and the Defendant MLA Law Offices, Ltd. Tendered a check to the plaintiff in the amount of $20,000.00 which satisfies a ~~substantial~~ meaningful amount of the agreed upon settlement — and the related attorneys' fee award and judgment — between the parties. ~~Counsel for the plaintiff has agreed to accept~~Defendants have further committed to make monthly payments in the amount of $2,000.00 commencing on September 1, 2022 towards the balance ~~of the settlement amount~~the judgment and settlement and further agrees to adjourn and hold in abeyance both of (1) to portion of the first information subpoena Defendants were ordered to supplement and (2) plaintiff's supplemental information subpoena ~~supplemental information subpoena~~ previously propounded upon the defendants, and ordered answered by the Court. ~~The parties further request that all pending, and fully briefed motions be likewise adjourned and held in abeyance pending the conclusion of settlement payments made by the defendants to the plaintiff.~~

Plaintiff also stated that any consent to the motion — as well as the requested *nunc pro tunc* extension,[7] since Defendants failed to prepare their application with enough time to file before the deadline — was conditioned on Defendants' agreement to Plaintiff's "substantive edits to the relevant paragraph." Aug. 4 (8:55 p.m.) Email from Remy Green. And, of course, those substantive edits refer to the "settlement — and the related attorneys' fee award and judgment." In other words, Dkt. Nos. 83, 92, and 93. Put directly, the letter states that Defendants will be making payments "*towards the balance of the judgment and the settlement.*" And again, there was no settlement in place other than the one at Dkt. No. 83. Defendants accepted the changes, and with minor, stylistic edits (and some prodding from Plaintiff, given the deadlines), filed the motion.

Shortly thereafter, Plaintiff sent the authority and proposal previewed above.[8] Rather than leading to a calm discussion, however, the proposal lead to sanctions threats and insults ("What is

---

[7] Without that extension, Defendants have violated an unambiguous Court Order.

[8] While it is not at issue now, for the sake of completeness: the proposal involved waiving time after an agreed moment — since Defendants agreed on the number of post-judgment hours through May 16 (*see* Dkt. No. 108 at 1) — assuming no further motion practice was required. *See Diaz v. Paragon Motors of Woodside, Inc.*, No. CV-03-6466(CPS)(RML), 2008 U.S. Dist. LEXIS 37440, at *25 (E.D.N.Y. May 6, 2008) ("it is well-settled that a plaintiff may recover fees in connection with enforcement of a judgment."). Plaintiff also proposed an adjustment of the underlying rate since Defendants made their first payment of any kind this week, and both the Second Circuit and Supreme Court have suggested adjustments to current rates in various forms are appropriate to account for delays in payment. *See, e.g., LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 764 (2d Cir. 1998); Missouri v. Jenkins, 491 U.S. 274, 283-84 (1989) ("an appropriate adjustment for delay in payment -- whether by the application of current rather than historic hourly rates or otherwise -- is within the contemplation of the statute.").



Page 3 of 5

Cohen&Green P.L.L.C. · 1639 Centre Street, Suite 216 · Ridgewood, New York · 11385 · t: (929) 888.9480 · f: (929) 888.9457 · FemmeLaw.com



wrong with you, anyway? I really do not understand your motive and inclination to lie and spin everything your direction no matter what the cost, even your reputation." (Aug. 5, 2022 Email from John Malevitis)). Defendants apparently, contrary to the written correspondence, believed that somehow Plaintiff had agreed to an unenforceable payment plan. They also, puzzlingly, said: "You repeatedly referred to the settlement agreement! Is there another one I don't know about!," seeming to suggest Defendants have forgotten that this case was settled in 2020. Aug. 5, 2022 Email from John Malevitis. That position is inconsistent with the giant pile of written communications described above.

But Defendants have made very clear they intend to stop making any payments as soon as they have paid $35,000.00 — far less than the amount due (particularly once collection time is added). Given Defendants' candid statements showing they never intended to comply in any sense with the first settlement, that promise would be illusory. It is hard to see why Plaintiff would ever accept it: Defendants already signed an agreement that would require them to make payments, and they did not do so. Indeed, as Defendants explicitly acknowledged, they simply failed post the surety required by the Settlement Rider, with no justification — and have not made a single payment towards the attorneys' fees or costs due until this week. *See generally,* Dkt. No. 108.

Maybe more to the point, even if Plaintiff had agreed to what Defendants propose (to be clear: she did not), that agreement would not be enforceable — and certainly not without a writing. Defendants were told to make *immediate* payments by Judge Komitee. And of course, there was the judgment against them. So the general rule voiding such agreements — that "[a] promise to perform a preexisting duty cannot be valid consideration for a contract because the promisor is bound by no additional detriment, and the promisee receives no additional benefit from the bargain" — applies in full force here. *Thales Alenia Space Fr. v. Thermo Funding Co.*, No. 13-cv-712 (SAS), 2014 U.S. Dist. LEXIS 109250, at *9 (S.D.N.Y. Aug. 7, 2014). *See also, Robinson v. Jewett*, 116 N.Y. 40, 53 (1889) ("performance of an act which the party is under a legal obligation to perform cannot constitute a consideration for a new contract.").

With all that, since it is clear there was no accord on the terms of Defendants' requested *sine die* extension — and the terms Plaintiff would agree to for consent to an indefinite extension are terms Defendants would apparently never accept — Plaintiff asks that the Court reset the deadline for production (once again) to a relatively short date in the near future. While it would be arguably appropriate given the circumstances to move straight to contempt, given that Defendants assert that they were confused, offering them the benefit of the doubt (and thus avoiding any need to inquire into the candor of Defendants' claim), Plaintiff has no objection to simply setting a new deadline for production — and then for a contempt motion.

As ever, we thank the Court for its time and consideration.

Respectfully submitted,

/s/
_____

Page 4 of 5

Cohen&Green P.L.L.C. · 1639 Centre Street, Suite 216 · Ridgewood, New York · 11385 · t: (929) 888.9480 · f: (929) 888.9457 · FemmeLaw.com



                     J. Remy Green
                        *Honorific/Pronouns: Mx., they/their/them*
                     **COHEN&GREEN P.L.L.C.**
                     *Attorneys for Plaintiff*
                     1639 Centre St., Suite 216
                     Ridgewood, New York 11385

cc:
All parties by ECF.

Page 5 of 5

Cohen&Green P.L.L.C.  ·  1639 Centre Street, Suite 216 · Ridgewood, New York · 11385  ·  t : (929) 888.9480  ·  f : (929) 888.9457  ·  FemmeLaw.com